1813.

*Pittsburg,
Saturday,
September 18.*

IRVINE and others *against* CAMPBELL.

### IN ERROR.

The seller of land, although he conveys it, retains an equitable lien against the purchaser, and all claiming under him, with notice that the purchase money is unpaid.

*Hence,* if by the deed of conveyance, or other instrument transferring the title, it appears that the time for paying a part of the purchase money, has not yet arrived, a purchaser under that title at sheriff's sale or otherwise is answerable for all that by the terms of the instrument was not due at the date of the purchase. But if by a distinct instrument between the original parties, the land is pledged for the whole purchase money due as well as not due, a purchaser is not bound by this unless duly recorded.

THIS was an ejectment in the Common Pleas of *Venango,* by *Charles Campbell* the plaintiff below.

Upon the trial of the cause, the facts were these: An improvement was made in the year 1796 upon the land in question, which lay west of the *Allegheny,* for the use of *John Field;* and a settlement was commenced at that time by virtue of the act of the 3d *April* 1792, and continued up to 21st *January* 1802. On that day *Field* sold to *Campbell,* the purchase money to the Commonwealth not having been paid, and *Campbell* was of course entitled to a patent, on having an official survey made and returned, and paying the purchase money. On the 29th *August* 1803, *Campbell* sold by an instrument of writing, and conveyed his right to *William Milford* for 2,400 dollars, of which 800 dollars were to be paid in one year from the date, and the residue in yearly payments of 300 dollars each until the whole should be paid. *Milford* was to take out the patent in his own name; and *Campbell* covenanted that the improvement right was good. This writing was entitled an Article of Agreement, and contained a covenant that each party would upon reasonable request give to the other, " any other or further instrument " of writing agreeable to law, or which should be necessary " for the security of either party." Immediately under this writing, and on the same paper, was another writing executed by *Milford* under hand and seal, by which he agreed that no title was to vest in him, till the whole purchase money was paid. This last writing bore date in the year 1805, without mentioning day or month, but in fact was executed in the month of *November* 1806. Neither of these writings was recorded till the 16th *October* 1809.

*David Irvine,* one of the defendants, purchased the land at sheriff's sale on the 21st *September* 1808, under a judgment in favour of *Jackson* assignee of *M'Candles,* against *Milford,* entered the 25th *March* 1808. There had been a judgment for *Joseph Taylor* and *Co.* against *Milford* at *September* term 1806, part of which was paid, and the remain-

der satisfied by the acceptance of another judgment entered for *Taylor* and *Co.* against *Milford* and one *Robert Orr*, at *September* term 1807. This last judgment *Irvine* paid after he had made the purchase at the sheriff's sale.

The question below, was whether *Campbell* had a lien on the land for all that part of his purchase money which remained unpaid; and the presiding judge gave it in charge to the jury, that *Campbell* had such a lien, and that the purchaser at sheriff's sale took the land subject to all equitable liens which the plaintiff had for the purchase money, without notice of such lien. To this opinion the defendant's counsel tendered a bill of exceptions.

*Wilkins* and *A. W. Foster* for plaintiffs in error.

*Ayres*, contra.

TILGHMAN C. J. After stating the case, delivered his opinion.

It has been decided by this Court that a purchaser at sheriff's sale is protected by the recording act, against all conveyances not recorded, of which he had no notice. The question will be then, whether the defendant stands in the situation of a purchaser without notice. In examining this point, we must distinguish between the deed from *Campbell* to *Milford*, and the other writing executed by *Milford* on the same paper with the deed. As the plaintiff claims under the deed, and cannot make out his title without it, he is bound to take notice of every part of it. Now it appears on the face of this deed, that part of the purchase money was not due at the time when the defendant purchased the right of *Milford* from the sheriff. This was sufficient notice that part of the purchase money was unpaid, for he ought not to have supposed that it was paid before it was due. The seller of land, although he conveys it, retains an equitable lien against the purchaser and all claiming under him with notice that the purchase money is unpaid. For so much therefore of the purchase money in this case, as by the terms of the deed was not payable until after the defendant's purchase from the sheriff, the plaintiff had a lien. It was urged on the part of the defendant, that the plaintiff had lost his lien by delivering possession to *Milford*, because the land

was taken up from the Commonwealth, not by warrant or other written title, but on terms of improvement and settlement. But I do not think so. It was incumbent on the defendant, when he purchased *Milford's* title, to look farther than to the bare possession. Seeing a mill and valuable improvements, he should at least have enquired whether the settlement had been commenced and continued by *Milford.* He ought to have known that nothing is more common than for one man to make an improvement, and sell it to another, so that before the expiration of the five years required by law for the continuance of the settlement, the land may have passed through several hands. In short, if he had exercised common prudence, he would have known that the title did not originate with *Milford*, but was derived from *Campbell.* Let us now consider the other writing signed by *Milford*, giving the plaintiff a lien for the *whole* purchase money. There was no proof that the defendant ever knew of that writing. It was quite a distinct thing from *Campbell's* deed, although written on the same paper, not having been executed till upwards of three years after it. It falls therefore within the provision of our act for recording of deeds, (18th *March* 1775,) by which all deeds any way affecting land in law or equity, are directed to be recorded within six months after the execution thereof, otherwise they shall be adjudged fraudulent and void against any subsequent purchaser for valuable consideration. The plaintiff then had no lien in consequence of this writing; so that his lien must be confined to that part of the purchase money which on the face of his deed to *Milford* was not due at the time of the defendant's purchase. But the president of the Court of Common Pleas gave it in charge to the jury, that the plaintiff had a lien for the *whole* purchase money. In that he went too far. I am therefore of opinion that the judgment should be reversed, and a new trial ordered.

YEATES J. was prevented by sickness from hearing the argument, and gave no opinion.

BRACKENRIDGE J. concurred with the Chief Justice.

Judgment reversed.