The opinion of the' Court was delivered by
Gibson, J.
The decision of the principal question, whether an equitable lien for purchase money, can exist in Penn *73 sylvania, under any circumstances, will render a decision of most of, if not all the other questions raised, unnecessary. I have given this question that deliberate consideration which the great importance of its practical consequences deserves, and the result is a settled conviction, that, with us, such' a' lien does not exist. In England the doctrine is now too firmly established to be questioned, and is said to be borrowed from the civil law. But whatever be its origin, it is certain that the first trace of it in the English law is discoverable in Chapman v. Tanner, 1 Vern. 267, which was decided asíate as 1684, three years after the dáte of the charter to William, Penn; and even there, as appears in Fawell v. Heelis, Amb. 726; the decision was rested on a special agreement that the vendor should detain the title deeds; which therefore presented, not the case of an equitable lien, as now understood, but óf an equitable mortgage. When the-colony Was founded, then, our ancestors could not háve brought this doctrine along with them, for it was ho part of the law of England; and no law, even of positive enactment, subsequently established there, would extend here, unless the colony were expressly named, or the law were adopted in practice. But the whole course of our jurisprudence, with the exception of certain dicta thrown out in two cases decided by this Court, which I shall presently examine, shews that the .doctrine has never been recognised either by the Legislature or by the judiciary, ©r supposed to exist by the profession or the people. The Legislature has uniformly discouraged every other lien or incumbrance than those which arise from transactions which appear of record, and which therefore can prejudice no one who uses proper diligence to ascertain the state of the facts: and even where liens are permitted, it .has been thought that the state of property, as well as the habits of the people, required them to be laid under severe limitations and restrictions. Thus, by act of assembly, a judgment continues alien for but five years, unless within that period, it be revived by scilre facias; and by the acts of 1715 and 1775, no mortgage could affect the land, unless it were recorded within six months from the date. This has, however, been-.altered in some respects by. an act of the last session. But the whole- plainly shews it was thought, the vendor had no other security than the mortgage ; for it yvould be strange if a purchaser from the *74 vendee should hold the land discharged of a mortgage gives . expressly to' secure the purchase money,'and yet hold subject to an equitable lien : and that this might happen; if the doctrine prevailed, is obvious ; for the purchaser might often be affected with notice that the purchase money had not been paid to the original vendor, when he could not be affected with notice of the mortgage; and, in such case, I think it clear, according to 'the English doctrine, that the lien would bold ; for taking a mortgage for the whole purchase money, would not, I apprehend, be construed a waver on the ground on which taking a mortgage for part gives rise to an inference that thé vendee is to hold discharged of the residue ; because by taking a mortgage for the whole, the parties expressly evince an intention,that the land shall be charged with the whole. But however that might be, we cannot intend that latent incumbrances were designed to be tolerated, when we find even those which appear of record, considered in some measure as clogs on the freedom of alienation so congenial to our habits; and find them so guarded by several .Acts of Assembly, as to require, under severe penalties, satisfaction tp be entered wherever the money has been paid. In other cases the Legislature has taken care to provide that the lien shall continue during only a definite period: as in the case of liens on houses for materials furnished, which continue for but two years, unless an action be brought or a claim filed in the prothonotary’s office of the proper county within that time; and of debts of deceased persons, which remain a Ken on their lands, for only seven years after their death, unless they are secured by mortgage, judgment, recognisance,.or other record. So •the lien, of judgments in the Supreme Court is-restrained to lands in the county where the judgment is rendered : and in like manner’the Ken of a testatum execution commences from the delivery of the writ to the Sheriff; who is .to indorse the precise time of receiving it? and whose duty it was, before the Circuit Courts were abolished, to certify the same to the Circuit Court of the proper county. All this shews that the doctrine of lien has never, been encouraged by the Legislature, but has been barely tolerated; and that too, only in particular cases and under severe restrictions.
In the practice of our Courts, we look in vain for a recognition of the doctrine, except as far as it may be. thought to be discoverable in the two decisions, to which I have already *75 alluded. But in neither of them did the case present a single feature of equitable lien; which arises only when the legal title has been conveyed. Indeed, on a .bill by the vendor for a specific performance «of the articles, he is said to have a lien, so as to protect him'from the claims of the other specialty creditors ; but this lien becomes operative only after he has conveyed: .as in Charles v. Andrews, 9 Mod. 157. But the name of the lien denotes its nature. It is a bare equity, and the only interest the vendor is supposed to have retained; for while he has the legal title, which will prevail against all the world, before the vendee has paid the purchase money, or done whatever else may be requisite to enable him to call for a conveyancé, he stands in need of nothing more. He has what is better than an equitable lien; he has the 'title itself. Now' I can hardly believe that the case of Stouffer v. Coleman, 1 Yeates, 393, the first of the two in the order of time,'is accurately reported ; for so learned and able a Judge as Chief J.ustice'M‘KEAN after determining that the legal title had not been conveyed, would not have embarrassed himself with questions on which the cause did not turn. ’ Lien was out of the question, as the vendor was not addressing himself to the equitable powers of the'Court, for a-specific execution Of the contract, but had brought an ejectment on the legal title to rescind it. So if the'vendee had sold to a stranger without notice, such stranger would, contrary to what the Court are made to say, have been in no1 better situation, than the vendee himself; for there is no plainer principle, than that the purchaser of an imperfect .title, (and every. equitable title is imperfect,) must abide by the case of the person from whom he buys. Whitfield v. Fausset, 1 Ves. 387. He is therefore bound to take notice at his peril. Neither could the detention of the title deeds add to the plaintiff’s case, when the title itself was not conveyed. The reason why detention of the muniments gives an equity in England, where deeds are not generally registered, and when possession of the title papers is a badge of ownérship, is that the want of .them.is notice to a purchaser from the vendee, that the latter has not cleared scores with the vendor; and therefore the title, though com-' píete at law, is to be considered as incomplete in equity : but that circumstance surely cannot strengthen the case when the title is incomplete even at law, It would seem, in this case *76 Stauffer Coleman, the plaintiff’s case was considered to be a, compound -of legal title, equitable lien, and equitable mort8aS'e ’ an<^ that j1 was sustained on no distinct'pr’rnciple, either of law or of equity. The defendant,.and not the plaintiff as said in the report, was claiming equity, and the manner in. which it was accorded to him for his improvements,.partly by compromise and partly by arbitration, shews the miserable shifts to which .we are sometimes driven by the want of a court of chancery. The other cast- to which I have alluded, is Irvine v. Campbell, 6 Binn. 118; and there the Court undoubtedly made use of an expression favourable to the doctrine ; but that was not the matter decided, for there also, the vendee purchased only an equitable title. The instrument under which the plaintiff claimed, being in the -form of articles of agreement, and containing a covenant for further assurance., was of cpurse executory. 'VYIth great respect for the Judges by whom the cause was decided, I apprehend the question of notice was immaterial ; for á purchaser of aiiy thing less than the legal title, takes it, as I have already said, with all its imperfections on its head ; and in all these circumstances the case differed from the ordinary ,case of un equitable lien, of which, being a mere equity reserved by the vendor, a purchaser of the legal title from the vendee will take the land discharged, unless he can be affected- with notice'. The decision on the point of the case was undoubtedly a sound one; but -however much we may respect what falls from a Court'in illustrating an argument, it can' claim nothing like what is due to the decision of.the precise'point in controversy. These two cases contain every thing oil the subject, that is to be found in pur books of -reports ; and this judicial silence is a strong argument against the- lien, which would necessarily have given rise to much litigation, if it had . been considered to prevail among us. , ;
Then as to the sentiments of the profession,;—Ihave never till lately heard a doubt on the subject. ' In fact, the doctrine accorded with neither the professional nor the popular understanding ; nor can I conceive how it ever came to be considered a principle of general equity any where, that a vendor,who has divested himself of every particle of right that can pass by deed, shall nevertheless have an available interest in the land. The implication that there is an inteñtion to reserve *77 a lien for the-purchase money, .in all cases where the parties do not, by express acts,' evince a contrary intention, is in almost every case inconsistent with the truth of the fact, and in all instances, without exception, in contradiction óf the express terms of the contract, which purp'orts to be-a-convpyr ance of every thing that can pass. The construction,- therefore,' which, independently of fraud or .mistake, reserves an interest against the express language of the parties, is unnatural and unjust. Indeed the distinctions taken, both as to the creation of the lien, and those circumstancés- which áre held to be a waver of it, are so purely arbitrary, that the mind is often puzzled to find the reason of them. Thus the assumption, that taking an independent security is. inconsistent with an intention to retain the lien, is merely gratuitous ; for thé parties might in-all reason, just as well be supposed to have intended the security to. he cumulative.' It is inconsistent with natural justice, that a vendor wh’o publishes to the world by the terms of his deed, thát he has parted with his whoie interest, and has trusted to the personal security of the vendee, .should become an object of special protection, against the ■consequences of his own negligence; and that too at the expense of a third person, who, in purchasing from the vendee, ev.en with notice that the purchase money was unpaid., has been guilty of nothing positively immoral or even unconscionable. In practice it is never understood with us, that a lien is reserved ; for it is so entirely technical that none but a lawyer would suspect that it existed. Tell any man, who does not belong to the profession, no matter how intelligent he may be in other respects, that if he conveys his house or farm without taking a judgment .or mortgage, he may nevertheless come on it as a fund in the hands of a subsequent purchaser, and he will disbelieve you. In this country where every man is his own conveyancer, or, at least, where those who draw instruments, are seldom of the profession, a construction contrary to the popular notions, would, in a peculiar degree, defeat the actual intention of the parties, and so-far work injustice. It is surely as important that the habits„and understanding of a whole people should have an influence on the construction of their contracts as those of a particular class; and we all know the influence of the cqurse of trade in determining- the meaning of the parties to a mercantile contract.
*78 But if such a lien were adopted, it is impossible to see how it could be enforced, through the medium of common law forms, with convenience .or justice to all or any of the parties. “ It is,” says Story J,, speaking of the equitable lien,- “ so peculiarly and exclusively the creature of a Court -of equity, that its existence cannot /safely be averred independent of the decree of such a Court.” 1 Mason. Rep. 122. A moment’s consideration will shew the justness of this remark. A Court constituted as are those of this State and of Massachusetts, where this kind of incumbrance does riot prevail, (and probably for that very reason,) is destitute of the most essential and indispensable means Of doing complete justice ;• such as the bill 'for. a discovery as to knowledge of circumstances; the answer on oath ; power to bring'every person interested'into Court as a party ; and particularly.that wonderfully plastic and efficient instrument the decree of a Court of chancery, which, adapting itself to the peculiar circumstances of each case however complicated, equally reáches ánd protects the most-remote, and the most immediate interests, and at one operation does complete justice to all. With1 us all these are .wanting, and in their stead we have power to deliver the land itself to the vendor, by an action of ejectment, or possibly to leVy an-executipn on it in the hands of a purchaser from the .yendee ; but how inadequate to the end either of these would be,, must, at once, be obvious. A sale on credit, for at least a part of the purchase money, is in this country the usual mode of disposing of land ; and I understand that during the late rage for speculation, a plantation in Lancaster county, was sold six times in one day; and at each of these sales'there would, according to the English doctrine, have been an equitable lien'. But it would be impossible, in such a case, for a Court in this State, to Settle the equities of the -respective parties. Suppose a recovery by the first vendor against the last' vendee : would the interven- ' ing vendors be squeezed out, or could they, by paying the claim of the first, avail themselves of his rights?-But the rights of the vendor are in this respect peculiar to his person, and cannot be extended to third persons, at least as far as respects marshalling real and personal estate ; and they- would therefore, .probably have to bring actions in succession, as each should happen1 to obtain satisfaction. In like manner *79 if the estate were sold on an execution, there would have to be separate issues to try the right of each claimant to the money, levied. And for what purpose involve the administration of the law in such inextricable embarrassment,? Not to enforce a demand founded innatural equity, but on an artificial presumption of intention, contrary, in almost every r ',r, , , , J J instance, to truth, that the vendee is to be a trustee, ot the estate, for so much of the purchase money as is not paid. It appears to me then, that the equitable lien for purchase money, (if such a lien can with propriety-be .called equitable,) has never been recognised here, either .by the legislative or judicial construction, the--practice .of the profession, or the mass of the citizens; and that as it is highly inconvenient, and by no means essential to the interests of justice, we ought not to adopt it. . '
. There were also questions made below as to the competency of evidence, but the facts and circumstances are so imperfectly stated in the bills of exceptions,-that .the questions do not appear perfectly intelligible, and I therefore refrain from expressing an opinion on them : but on the firsfground, I am of opinion that the judgment be reversed.'
Duncan J.
This was an action to try the right to money arising from a sale made by the Sheriff of York county, of a tract of land, conveyed by Jacob Bower to Daniel Treichler, and sold as his estate. The defendant in error claimed it on the ground of lien for the unsatisfied purchase money, for which he had taken the bonds of Treichler and one John Smith-, there is a receipt on’the deed for the purchase money, and possession was delivered.
This case gives rise to inquiries of very extensive consequences.
1st. Does the British -law of liens, for unsatisfied purchase money, where conveyance- is executed, receipt given, title papers given up, possession delivered, extend to this State.
2d. Does the acceptance of a bond with security, amount to a waver of this lien.
3d. Can such latent equity' prevail against a judgment creditor ; and 4th. On a sale of lands by a Sheriff, deed acknowledged, money in hi's hands, is he bound to apply the *80 proceeds to the discharge of unsatisfied purchase monéy, or to the payment of the-judgment creditors.
It is proper in limine to observe, that in deciding this case, it can make no difference whether the issue is directed by the Court, or it is an adverse suit, by the vendor, against the .Sheriff. The sale by this application by the vendor, is validated by- him'. The purchaser at Sheriff’s sale, is not before the Court, nor in the way in which the subject has been considered, has he any interest in the event.
The determination of any one of these questions against the defendant in error, would be decisive ; but it is made the duty of this Court, to give their .opinion, on every point taken in the Court below. I will, in considering these points, reverse their order, and begin with the fourth.- Whqt estate is .seized.and sold ? -The estate ority which the <jebtor had, “the purchaser to hold only such estate as the debtor held at and' before, the taking in éxecution.” Here there is a purchaser without' notice, and the lien as to him, is extinct. If there were any specific- lien on record created by deed or will, binding the land, it might be that the Sheriff would be bound to pay them ; there is a Nisi Prius decision to this effect, Nichols v. Postlethwaite, 2 Dall. 131, but I do not go out of my way to. give any opinion on that. But that where one' has conveyed away his estate, given a receipt for the. purchase money, delivered possession,—where a creditor relying on the estate as a fund, has afforded a credit after a long and expensive course of legal proceedings, that such creditor should be intercepted and deprived of the' fruits of his execution by this latent equity, is a novel and alarming doctrine. Let us attend to the consequences.. In the course of twenty years, the estate may have passed through every letter of the alphabet, the intermediate owners dispersed in every quarter.of the almost boundless regions of the United States, their'place of abode unknown,‘or if known, beyond the reach of, reasonable inquiry, every hand through which-it passed might claim some remnant of purchase'itioney. What a scene of confusion would ensue* how are all their claims to be adjusted, the parties brought before the Court., Is there to be one issue^qr twenty four? The creditor has already sufficient difficulties to encounter, add this to them, and you-destroy all credit; consider what, a temptation is opened for fraud. *81 between the vendor and the insolvent debtor, who by connivanee, might keep back the vouchers of payment and after-wards divide the spoil; the latent incumbrance kept in petto until the man possessing every indicia of property, conveyanee with acquittance, and receipt of purchase money, with muniments of title, with possession, on the faith of this ownership, obtains a credit, and just as his creditor is about to feceive his just debt, the covert incumbrance springs upon him, and swallows up all in unsatisfied purchase money. this had been a private sale, could the vendor sue the*purchaser ; what would be his form of action ; - if he has any right in this State, his remedy must be by ejectment, the substitute for a bill in.chancery, which has been from necessity applied to all cases, where one has a lien on lands, for the recovery of which there lies no action at common law, but in chancery only. Our Courts wanting chancery powers, through the medium of a jury, and conditional verdicts, and imposition of equitable terms, nearly accomplish indirectly, what Courts of equity would directly decree.
A deposit of deeds, with a written agreement to execute a mortgage ; the depositor is in debt to others ; he gives a judgment on which the lands are sold; money in Sheriff’s hands j deed acknowledged to purchaser ; can the man who holds this pledge, draw the money from the Sheriff? One would be startled at this proposition, yet he has a preferable equity, and overreaches the vendor’s lien on the estate for any part of the unpaid purchase ' money. Sugden,-47S. Is this lien a reprisal on an inquiry « whether the rents, issues, and profits will pay the debts within seven years.”
Make the most of this lien. Say that a deed executed holds the same lien, as articles executory. If lands held by articles, are sold by the Sheriff, the purchaser takes subject to the payment of the purchase money,, out of the money raised on the sale; This is not deducted ; the creditor gets the money from the Sheriff and not the vendor ;• his remedy is by ejectment. Irvine et al. v. Campbell, 6 Binn. 118. On a judicial sale under a decree in chancery, where all necessary parties joined in the conveyance, possession is delivered, money paid into bank, b.ut not to be paid over without notice to the purchaser, the tenants were served with awrit of right, or an adverse claim before money paid out of bank, the mo *82 ney must be paid under the decree, and the purchaser cannot object to its application. Sugden, 415.
But the question is settled as to a purchaser at Sheriff’s sa^e’ unc*er act f°r recording deeds. He is a purchaser, though a judgment creditor is not, and is protected against an unrecor(ied deed. 2 Binn. 40. It is of some weight that though this kind of claim must have existed in hundreds of cases, this is the first time it has been advanced. This plainly shews the general sense. This action cannot be maintained agaiiist the-Sheriff.
Does the equitable lien prevail against judgment creditors ? By several Acts of Assembly, as well as by the common law, a judgment is a lien, binding lands. It continues a lien on real estate, without execution levied, for five years. A judgment here, in many respects, differs from a judgment in ■England, as to its binding effects, and the interest acquired by the creditor, and his power to compel payment by a sale. There is nothing here to distinguish it from a mortgage, except that the mortgage is specific, and the judgment general. In England, a judgment creditor is said to have neither jus in re, nor ad rem.; he has a lien, but non constat, whether he will ever make use of it, for he may recover his debt, by fieri facias, from the goods of cognisor; he may take the body on a capias satisjaciendum, and thus discharge the lien. It is considered in that country, that the judgment creditor does not lend his money on the immediate view of the cognisor’s real estate, 1 P. W. 280,1 P. W. 492, but that does not hold here. For in Colhoun v. Snider, 6 Binn. 135, Judge Yeates, the strenuous and finally successful advocate of the doctrine, that judgments do not bind after purchased lands, relies much on the binding specifically all lands, held by the cognisor at the time of the entry, and that creditors do rely on the real estate always as a fund, and often as the sole fund. It is very common to take a judgment bond as a security, with stay of execution for years. This would be a miserable dependance, if the security was not equal to a mortgage, in all cases except in the one of an unrecorded deed. That depends on the different provisions of the several Acts for recording deeds and mortgages; there is a wide distinction in the effect of not recording mortgages and defeasible deeds and absolute conveyances. The Act of 1715 establishing the *83 office for recording deeds, declares that the first class shall not be sufficient to pass any estate of freehold or unless recorded Within six months; in the second, the recording is only for safe custody, and rendering an exemplifi- ° i t rr , . , . - ■ i i j cation as good and effectual evidence, as the original deed, The Act of 1775, renders the- conveyance, hot recorded within six months, void only as against a subsequent purchaser, or mortgagor, leaving it in full force as to all other purposes. In Jackson v. Dubois, 4 John, 216, it was decided, that a mortgage not recorded has a preference over a subsequent judgment docketted; for the unrecorded-mortgage before the Act, stood upon the footing of any other lien, and the Act only provided that no mortgage, unless duly recorded shall defeat or prejudice the interest of any bona fide purchaser or mortgagee ; but it is not so here, for no estate passed Under the Act of 1715 ; consequently the mortgage gave no lien, unless recorded within the limited time ; and in the New York case, it was held that land sold on a judgment by Sheriff prior to the registry of the mortgage ; the purchaser would hold discharged of the mortgage, and the decision in 2 Binn, 40, does not touch the question of unrecorded mortgages, but refers only to absolute conveyances.
We are not left to conjecture on this subject; for the Act of 23d September, 1783, amounts to a legislative declaration ; it provides “that all mortgages executed between 1st of June, 1776, and 11th of June, 1778, which have been recorded, or shall be recorded within six months after the passing of the Act, shall be as good and effectual in law, as if they had been, recorded within the limited time : with this exception, that they shall not operate against any judgment or lien whatever.” The whole policy of our laws evinces the intention of the Legislature, that the notice, by registry should be given of all liens ; but by a late Act, mortgages only take effect from the registry, except in the case of a mortgage given for the purchase money of land, and the time allowed for registering is abridged: it would be absurd, that the security by mortgage should become extinct, if not recorded within six months, and yet the bond should continue the lien for an indefinite time. My opinion is, that a lien by judgment is a legal incumbrance, to be preferred to an implied lien for purchase money.
*84 Does the taking of bond with security wave the implied .lien ? It has justly been observed, that the taking of a bond with security, has become so perplexed a question, as to re»v quire a chancery suit to ascertain whether it is waved or not. In New York, in Garson v. Green & al., 1 John, Ch. C. 308, it was held, that taking a negociable instrument from vendee, did not exempt from the lien. In Virginia, while they seem to adopt the English rule of lien, yet the- Courts have settled the question. W here a bond with security has been taken, the lien is thereby waved. Cole v. Scott, 2 Wash, 141, Wilson v. Graham’s executors and devisees, 5 Munf, 297., All the cases, and there are many with shades of difference scarcely perceptible, and impossible to be reconciled, are fully considered by Mr. Justice Story in Gilman v. Brown, 1 Mason, 212, who decides that where there is the security of a third person taken as such, this extinguished the implied lien; and on appeal, the Supreme Court determined that, a collateral security for the purchase money, discharged the implied lien, 4 Wheat. 256.
The lien is founded on -a presumed intention. Here there was evidence of a contrary intention, from the nature of the speculation. Bower well knew that Treichler bought with a view to lay out a town on the land, to divide it and sell in small lots; he knew before he executed the conveyance, that others were concerned in the purchase, yet the deed is made to him alone, and when he insisted on Cassel being added as a security, while he made the deed to Treichler alone, the ostensible man, to whom the title was to be trusted, and accepted the bond of Treichler and Smith, this arrangement shews that the land was not to be charged; it is manifest, lien was not in the view of any party. When we turn our eye to that day of infatuation, consider the extravagant price, the rage forlayingout towns, the declared design of the purchaser, which was not to keep the land, but to sell—to sell quickly, before the bubble burst; to sell certainly long before the last instalment became due, it is obvious, that it was not the intention of the parties, to clog it with an incumbrance, which would defeat the whole scheme. In Brown v. Gilman, Story J. observes, it was in the contemplation of the parties, bought on speculation, to be sold out to sub purchasers ; the greát object of speculation would be embarrassed by any latent incumbrance, *85 which by a "subdivision of the property,might be apportioned among an almost infinite number of purchasers. -It was not supposeable that so obvious a consideration was not within the views of the parties, and viewing it, it was difficult to believe, they should mean to create a lien. The same course was adopted on the appeal; taking the security of a third person, it was decided; repelled the lien, standing on that alone. Considering all the circumstances of the case, the large payment in hand, the grand object of the -purchase, the taking Smiths the bond, the subsequent addition of CassePs name, the anxiety of Bower to procure, that name, that Treichler was not able to make up his half of the hand money, and Bower took his own bond for that balance ; the presumed intention to retain a lien, is removed ; the lien is not in its nature conclusive, but prima facie evidence of an intention, which vanishes, when the real state of the facts is disclosed.
The Court, in their charge, have gone the full extent of the British decisions, and have considered that as settled, which even there remains most obscure and unsettled, They state in terms, that taking an obligor in addition to the purchaser, was not such an alteration as would of itself defeat the lien. There was error in this ; for ipso facto the taking a bond with security waved'the implied lien. '
I have reserved for the last enquiry, the primary question to the decision of which, many are looking with anxiety, and deep interest; for on its decision, rest numerous claims, to a vast amount, as we are informed, and as I. well know to be the case.
Does the rule of implied lien extend tothis State? If it had .been adopted by a settled course of decisions, and the public had acted upon it', and placed reliance on it as' a security ; and men when they bought had been apprised of its existence, and those who- credited- them on the strength of their title, had been put on their guard; it would,’ by the course of dealing and general adoption, become a - settled rule of property, and whatever opinion I might entertain of its inconveniences, I would not disturb it, or unsettle it. But far different is it; for the doctrine is here a novel one lately broached in this State, and I may add lately imported, and directly against the understanding of the country, and the opinion of professional men, and in direct opposition to the policy of our government, which is to leave this .species *86 of property, altogether free to, alienation, unincumbered with secret trusts, or concealed liens. What is the rule contended for? It is, that where an absolute conveyance, with-receipt for. the purchase money is given, and possession delivered, where-the purchase money is hot paid, but bonds given ^"or payment, the vendor- has a lien in equity for the purchase money, against the vendee and his heirs, and against all claiming under them with notice* that it remains unpaid, though there is no agreement for that purpose.
The first notice we have of this-supposed lien, is in Stouffer v. Coleman, 1 Yeates, 393. It is a Nisi Prim decision, and but of one Judge, yet it was acquiesced in, and was the opinion of a very eminent Judge, .the late Ch. J. M‘Kean. There a writing had been executed,.conveying by words' of actual grant, but it was called an article of agreement, and looked to a future conveyance of the land, for there was a covenant to convey-at a distant day, by a good and sufficient conveyance. The Ch. Justice considered the case as turning on a short question.' “ Did Stouffer sell and convey, or only agree to sell and convey.” But even considering it an agreement, a difficulty still rested with him, whether the bond taken for the purchase money, did not destroy the lien. To obviate this, he had recourse to the circumstance,' that no receipt was indorsed for the purchase money, and Stoiiffer kept possession of the title' papers. ' No doubt the lien existed, because the ' legal title remained in Stouffer ; but had it been a conveyance executed, no question at that day would have been raised,— no doubt entertained but the lien was gone. It was construed an agreement executory, where the vendor retained the legal title, and consequently held the lien. Fawell v. Heelis, Ambl. 724, December, 1773, the latest decision before the revolution was. recognised as the lfiw of the State. One sells an estate, and takes bond for the purchase.money, the vendor has no lien against the creditors, for whose benefit the estate had been assigned. Lord Apsley, in concluding his opinion, 'says, if the vendor parts -with, his estate, and takes a security for the consideration money, that is no reason for a Court of ■equity to assist him against the creditors of the purchaser. This was the principle of the British Court of Chancery at the time of the revolution. New principles may have since been-adopted there, but here they have not been recognised, *87 nor are they applicable to the state of property, or condition of this country. Irvine et al. v. Campbell, 6 Binn. 118. This case has been misunderstood. There as in Stauffer’s Case, the instrument was denominated an article, of agreement, and contained a covenant, that each party would give to the other, any further instrument of writing agreeable to law, which should be necessary for the security of either. So far from that being an acknowledgment of payment of the purchase money, it appeared on the face of the agreement that it was not due, until after the judgment and sale to Irvine.. The vendee if required, was to give security for it. It was then very properly held, that a vendor had a lien for’ his purchase money; the lien was apparent on the very instrument, and there was á covenant for payment, running with the land. It was a stronger case of lien than Stauffer’s; there was no bond ; other security was contemplated, and it is to be observed in that case, that recourse was not had to the Sheriff, for the proceeds of sale, but to the land by ejectment. And in Colhoun v. Snyder, 6 Binn. 167, Yeates J. states, that if the rule should.be adopted here, that judgments bound after purchased lands, the situation; of a buyer and seller would be most perilous. The seller would not be secure by taking a mortgage far judgment. The estate must necessarily be in the buyer, before he could give a mortgage or judgment, which might become a lien on the property; for eo instanti the conveyance is delivered,'the old judgment attaches. The idea of lien had not entered into the mind of that learned Judge, who spoke from an experience of more than fifty years, ¿on a subject with which he had been particularly conversant j and from the general sense of the community, and as the point is new with us, there is good reason and sound policy in adhering to the common understanding, that the security of the party himself should extinguish the lien on lands, as it-does on personal chattels. 4 Wheat, 296. That the rule itself is not one of general, -but peculiar equity, we have the high authority of the Ch. Justice of the United States; for he cautiously avoided giving an opinion, whether it extended to the State of Georgia We do not mean to decide 1 that question,” was his observation.
Our local circumstances ■ in considering questions of this kind are always to be respected. They differ materially from *88 old settled countries, whose lands being improved for ages, the price is not so subject to great fluctuation; it is different here, where lands are treated as a species of merchandise, Colhoun v. Snyder, 6 Binn. 146.
The rule of law is caveat emptor, but let the seller take care; it is easy for him to take a mortgage, if he means to hold the land as security; and this is so well understood that the instances are few, where this is intended, that a mortgage is not taken; and where' this is not done, prima facie the vendor, waves all lien, relies on the obligation of the vendee, sometimes alone, at others with the addition of some person, as his security. Where he parts with the title, he takes all risk of payment on himself.
In this State the obligation of Bower was not what in the French law is called a privileged obligation, for which he had a lien, on the property sold, to be paid in preference to other creditors, but a common unprivileged obligation without lien, agreement, or covenant binding the land, running with it; the personal security of the obligor. Such likewise is the settled principle in South Carolina, ex parte Wragg, 2 Desaus, Ch. Rep. 509. It was there decided that a vendor sellinglands, and conveying them in fee and taking a bond for the purchase money has no implied lien on the land, so as to give him any preference over the creditors of the purchaser.
‘ This implied lien would impede the transfer of lands, and the settlement of the country; raise up a hew and fruitful stock of litigation, whose branches would cover the land, and entangle the people in endless controversies. Besides without vesting other chancery powers, than our Courts can legally assume, it would be impossible to accommodate the common law jurisdiction and form to the varieties of disputes, which this contentious doctrine would introduce. Indeed many of our positive laws must be repealed to meet it, the whole economy of our laws changed, as regards the payment of the debts of persons deceased, and the division of the estate of insolvent debtors among the creditors. Fora bond for payment of purchase money would come in for payment, out of the land purchased, and held by the deceased, before the many other kinds of debts that precede it under our laws, and such bond might exhaust the most valuable parts of the estate of an insolvent debtor, and leave little for his other creditors. There is *89 no natural equity, in favour of the lien, it does not exist at law, it is not created by usage of the parties or express agreement.
But I except all cases of deceit and distinct fraud, where one having direct notice, that the purchase money has not ° .. 7 • 4 ' i t* been paid, for the purpose of defrauding the vendor, obtains a judgment mortgage or conveyance. I would hold all this fraudulent and void, arid that vendor might proceed to judgment, and sale of the land ; fo,r this transaction, though valid between the parties, as- to others, by reason of'cóvin, collusion, or confederacy would be fraudulent, and void. As if a man knowing that a creditor has obtained a judgment, buys the debtor’s goods for a full price to enable him to defeat the creditors, it is fraudulent .and void, Worseley v. De Mattos, 1 Bur. 474. So if a man knowing that an executor is wasting the goods of the testator, and turning them into money, the more easily to run away with it, buys from the executors with that view though fora full, price, it is fraudulent and void, Mead v. Lord Orrery, 3 Atk .235. For nothing can be better established, than that the. laws will set aside, however valuable the consideration may be, every contract which is fraudulently designed to prejudice, and does prejudice others? but the knowledge by a purchased that there was a balance of purchase money remaining due when the vendor had conveyed the legal title, and taken bond for the purchase money, is not of itself such notice as will taint the purchase with fraud, and render the land liable for the purchase money.
On the exceptions to the evidence, as there' was no lien, and as no action could be supported against the Sheriff, it follows that all was irrelevant and inadmissible. For these reasons I am of opinion that the judgment ,b¿ reversed.
Judgment reversed.