, BOWERS *against* OYSTER.

There can be no such thing as a valid, efficacious, parol mortgage.
The interest which a tenant hath in lands which he holds by parol from the tenant in fee simple, as a pledge or security for the payment of a debt, is divested by a sale made by order of the Orphans' Court for the payment of the debts of the intestate debtor.

ERROR to the Common Pleas of *Cumberland* county.

This was an action of ejectment, in which, in the court below, *Jacob Bower* was defendant, and *Abraham Oyster* and *George Oyster* were plaintiffs.   *John Wormley*, in his life time, was the owner of the house and lot in *Wormleysburg*, for which the ejectment was brought, and both plaintiff's and defendants claimed title under him.   In 1820, *Wormley* being indebted to *Bower*, they made a parol agreement, by which, the possession of the house and lot in controversy, was delivered to *Bower*, to hold as a security for the payment of his debt, and until it was paid.   The proof was, that the annual value of the house was about equal to the interest of the debt.   After 1820, *Wormley* became insolvent and died intestate.   In 1825, *William Line*, Esquire, became the administrator of *Wormley*, and applied to the Orphans' Court for an order to sell his real estate, for the payment of debts, and among other parcels of real estate, which he was ordered by the court to sell, was the house and lot for which this ejectment was brought.   He sold it to the plaintiffs, *Abraham* and *George Oyster*, and the question was, whether they were entitled to recover from *Bower*, without paying his debt due to him by *Wormley*.

The following points were put to the court below, upon which they were requested to charge the jury:

1. A parol mortgage or pledge of real estate, accompanied by the actual loan of money, and delivery of possession to the morgagee, is not within the statute of frauds, &c. and is good and available against the mortgagor, and all claiming under him, subsequent to the date of such parol contract.

2. That a sale made by the administrator of such mortgagor under an order of Orphans' Court, for the payment of debts, would not defeat the mortgagee's right of possession, until his debt was actually paid.

3. That such sale by an administrator, would not have the same effect as a sale upon a judgment, prior in date to such parol mortgage.

4. And if the jury find that the defendant, as early as April, 1820, entered into a parol agreement with *John Wormley*, in his

(Bowers *v.* Oyster.)

life-time, by which he agreed and actually loaned to said *Wormley* four hundred and fifty -six dollars, and said *Wormley*, to secure. the payment thereof, then agreed, and actually delivered to the defendant, the possession of the house and lot of ground in dispute, to be held by him until the said money was repaid: and that defendant took possession, and still holds the same under the parol contract, and the money is yet unpaid: and that at the time of *Wormley's* death, no judgment existed against his estate, prior in point of date, and lien to the date of said contract; and that when the plaintiffs purchased, they had notice of the defendant's title and claim, and that he claimed to hold possession, until his debt was paid: then the plaintiffs cannot disturb defendant's possession, without payment be made of his debt.

The court *(Reed, President)* answered the first point in the affirmative, and the second, third and fourth in the negative; and was of opinion that the plaintiffs were entitled to recover: The jury found accordingly.

*Metzgar* and *Carothers*, for plaintiff in error.

*F. Watts*, for defendant in error.

The opinion of the court was delivered by

KENNEDY, J.—In this case, although four points were submitted by the counsel for the plaintiff in error to the court below for their decision, yet they present but two questions, which will be considered.

The first is, whether a parol mortgage of land, accompanied by possession in the mortgagee, to secure the payment of a debt owing to him by the mortgagor, by specialty, is good against subsequent purchasers, for a valuable consideration, and entitled to preference in respect to a lien, as against subsequent judgment creditors, or is sufficient to create a lien upon the land?

The second is; whether a sale by order of the Orphans' Court, to raise money to pay the debts of the mortgagor after his death, discharges the land from the effect of the lien, if any it has, of such a mortgage?

The first point, which involves the first question, was answered in the affirmative by the court below; and of course, not excepted to by the plaintiff in error, who was the defendant claiming under the parol mortgage. If this point, however, had been correctly answered it would have removed the very foundation of the defence set up by the plaintiff in error, and have rendered the decision of the other points unnecessary.

There can be no such thing as a valid and efficacious parol mortgage. If it be considered as passing any estate or interest in the

(Bowers *v.* Oyster.)

land, the statute against frauds and perjuries interposes, and declares that a parol contract shall not create or pass a greater interest or estate in the land than *at will.* It will also be found that the act of 1705, which directs the mode of proceeding upon mortgages by *scire facias,* after the debt has become payable, to enforce the payment of it by a sale of the mortgaged land, that the only mortgage recognized or mentioned is that by deed; that is, made in writing under the hand and seal of the party. Again the 8th section of the act of 1715, declares, that no deed, or mortgage or defeasible deed, thereafter to be made, shall be good or sufficient to convey or pass any freehold or inheritance, or to grant any estate therein, for life or years, unless such deed be acknowledged or proved and recorded within six months after the date thereof. Also by the act of the 28th of March, 1820, it is declared, that "no mortgage or defeasible deed in the nature of a mortgage, shall be a *lien* until such mortgage or defeasible deed shall have been recorded or left for record," as therein before directed, except such mortgage as shall be given for the purchase money of the mortgaged premises, when sixty days are allowed for the recording of them. It is also clearly manifest, that the acts of assembly just mentioned, which prescribe the mode of proceeding to enforce payment of debts due upon mortgages, and direct the probate or acknowledgment and recording of them, are only applicable to such mortgages as are in writing, and cannot, by any possible construction, be extended to parol mortgages. If the legislature had ever dreamed of there being such a thing as parol mortgages, some notion or mention would certainly have been made of them in some of these acts. If it could have been conceived that parol mortgages could have legitimately existed, after these various enactments with respect to written mortgages, there was quite as much reason for prescribing a remedy for the recovery of money due upon them. But if there were the least shadow of doubt with respect to this matter, the act of the 28th of March, 1820, at once removes it; for it declares in the most positive terms, that *no* mortgage shall be a *lien,* until it shall have been recorded, or left in the proper office for that purpose, after having been first duly proved or acknowledged. Now it is obvious that these prerequisites can only be observed and complied with in the case of written mortgages, and therefore no others can be made to create a lien upon lands or real estate.

To say after all these provisions of the legislature on this subject, that a parol mortgage is good and effectual for the purpose of passing any other interest or estate in lands than *at will,* or to create a lien upon them, would not only be repugnant to the spirit and terms of the act of assembly referred to, but would give to parol mortgages of land, accompanied by a corresponding change of the

31

(Bowers *v.* Oyster.)

possession, much more power and efficacy than is allowed to written mortgages, which are certainly entitled to much higher consideration and respect, because of the unchangeable certainty with which they may be made to appear, as well as the greater degree of deliberation and solemnity with which they are generally executed. This however cannot be, it is too unreasonable to be admitted, and therefore is not the law.

As to the second question, I think that the court below was right. It is expressly provided by the 21st section of the act of the 19th of April, 1794, commonly called the intestate law, that no lands, tenements and hereditaments sold by order of the Orphans' Court, under that act "shall be liable in the hands of the purchaser for the *debts* of the intestate." Now had the parol mortgage, which the plaintiff in error claims to have been made by the intestate to him, been valid, so as to have given him a lien upon the house and lot of ground, to recover the possession of which from him, this action was brought, still I apprehend, by the terms of the act last mentioned, the lien would have been discharged by the sale under the order of the Orphans' Court, at which the plaintiffs in error, under the greatest possible effect that could be ascribed to the mortgage, had no right to claim or hold possession of the property, but as a security for the payment of his debt. A mortgage has been considered in *Pennsylvania* merely a security for the payment of the debt, and as giving the mortgagee a specific lien upon the land mortgaged for the payment of it. In this case, the debt for which the plaintiff in error claimed to hold the possession of the house and lot, was one of the debts owing by the intestate at the time of his decease; and to raise money for the purpose of paying these debts, the house and lot was decreed by the Orphans' Court to be sold, and was sold accordingly. By the very terms, then, of the act last referred to, the property was not to be liable for the debt of the plaintiff in error, or any other of the debts of the intestate, in the hands of the purchasers. It can make no difference that the plaintiff in error's debt, was claimed to be a mortgage debt upon this property, for the term "debts," which is the word used in the act without qualification or restriction attending it, must be considered as embracing all debts, whether due upon mortgage, judgment, specialty, note or book account: and if so, then the property according to the direction of the act, would no longer be liable for his debt, after it had passed into the hands of the purchasers by the sale under the decree of the Orphans' Court.

The case of *Molier* and *Noe*, 4 *Dall.* 450, has been mentioned by the counsel for the plaintiff in error. The principle established by this court in that case, is in favor of this construction, and against the plaintiff in error. It was decided there, that the sale under the order of the Orphans' Court, discharged the property sold,

(Bowers *v.* Oyster.)

from the lien of judgments obtained against the intestate in his life-time, and remaining unsatisfied, and liens on the property at the time of his death; but that they ought to be paid out of the money arising from the sale, according to their priority.  The *dictum* of the late chief justice in that case, which has been relied on by the counsel of the plaintiff in error, was uncalled for by the case itself, and the question not involved in it.   And although it was purely *obiter*, I admit that it is entitled to great respect, coming from so distinguished a source.   But as the case did not present the question, we may well presume, that it was not argued by counsel, and that it did not occur to him that if there had been first, a judgment, next, a mortgage, and then a second judgment all liens against the property, at and before the decease of the intestate, and continuing to be so, up to the time of sale under the order of the Orphans' Court, that what he said in regard to a mortgage debt, could not well be carried into effect.   After delivering the opinion of the court, that the sale of the property under the decree of the Orphans' Court discharged it from the liens of the judgments obtained against the intestate in his life-time, he says "I conceive them (mortgages) to stand on a different footing from judgments, because the mortgagee is strictly speaking, the owner of the land and may recover it in ejectment.  The mortgagor has no more than an equity of redemption; nor have the Orphans' Court power to sell a greater estate than he is lawfully possessed of." Now suppose that the property had in the case last put, been worth the amount of the first judgment and lien, and the plaintiff in that judgment had bought it at the sale made under the decree of the Orphans' Court,'at the price just equal to the amount of his judgment, and it being the first lien according to the decision of the court in *Molier* v. *Noe*, would have entitled the purchaser to the money; so that it would have been sufficient for him to have given the administrator a receipt for the amount of his judgment; and to have taken of the administrator, a receipt for the payment of the purchase money.   But if the *dictum* of the late chief justice were correct, the mortgagee, although his mortgage was posterior in date to the lien of the judgment of the purchaser, would have a right to proceed on his mortgage, and sell the property over again, or to proceed by action of ejectment and take the possession of it from the purchaser, because the sale made under the order of the Orphans' Court, must be considered as selling mearly the equity of redemption, and not the legal and absolute estate.   It is manifest, however, that this could not be, because it would in effect be, to make a subsequent mortgage prevail over a prior judgment; and that too, without the least default on the part of the judgment creditor; or in other words, to postpone the lien of the judgment to that of the mortgage, which was posterior in point of time.   And according to

this opinion of the late Chief Justice, if the property had been sold for more than the amount of the first judgment, the surplus would have been applicable to the payment of the second judgment, to the exclusion of the mortgage, because it was money which arose from the sale of the equity of redemption, or perhaps for this reason, which would be still worse, the second judgment would be entitled to a preference over the first, which would be repugnant to the principle decided in *Molier* v. *Noe*, as also in many other cases decided since that: upon this subject, the principles which he advances in support of his opinion have been, as I conceive, repudiated by the subsequent decisions of this court, on the subject of mortgages, in some of which he joined, because he delivered the opinion of the court himself.

In the first place, it has been decided, that a mortgage, in this state is considered merely a security for the debt. *Schuylkill co.* v. *Hoburn*, 7. *Serg. & Rawle*, 419. *Simpson* v. *Ammons*, 1 *Binn.* 177 *Wentz* v. *Dehaven*, 1 *Serg. & Rawle*, 317, and in this last case, that it may be released by parol; and in all of them, that as far as respects third persons, the *Mortgagor* is treated as the *owner* of the land to all intents. So that I apprehend, a freeholder, who has mortgaged his freehold, would still remain a freeholder, and would be qualified to serve as a road viewer, or appraiser of goods distrained for rents, or a juror, or member of an inquest, in the case of a proceeding by a landlord before two justices of the peace, to recover possession of the leased premises, after the lease had expired; in which several situations, none other than a freeholder, by our acts of assembly can serve. So a widow is entitled to a dower out of the land mortgaged, before the marriage; and in which the husband had the equity of redemption, at the time of his death. *Reed* v. *Morrison*, 12 *Serg. & Rawle*, 18.

In the next place, it has been decided, that land taken in execution under a judgment of later date than other judgments, and a mortgage upon the same, and sold by the sheriff, shall be discharged from the liens of such judgments and the mortgage, and that the money arising from the sale, shall be appropriated to the payment of the respective judgments and mortgage according to the priority of their liens. *Kawfelt* v. *Bower*, 7 *Serg. & Rawle*, 64. *Semple* v. *Burd, Ibid.* 286. *Norris* v. *Willard*, 1 *Penna. Rep.* The *Corporation of the Widow's Fund* v. *J. B. Wallace*, decided in *Philadelphia*, in January, 1831, and *Hoover* v. *Shields*, 2 *Penna. Rep.* 135.

Again, so far is the mortgagee from being considered the owner of the mortgaged land, that although the mortgage be of the fee simple, yet his interest is considered of a mere chattel character: and upon his death will pass to his executors or administrators, and not to his heirs, as it would do, were it considered his estate.

Hence his executors or administrators may assign or dispose of

it, and the assignee may maintain an action of ejectment to recover the possession, unless the *debt be paid to him.* So that here again the opinion of the Chief Justice which was, that because the mortgagee might maintain an action of ejectment to recover possession of the land, he was therefore the owner of it, is not sustained. He has merely a right to the possession of it, unless the debt be paid, and if not paid, to receive the rents and profits of the land until his debt be satisfied. Further, it has been decided by this court, that the interest of the mortgagee, whether the mortgage be legal or equitable, cannot be taken in execution, and for this reason, because the mortgage gives *no title to the land and vests no real estate in the mortgagee, but is to be considered as a mere chose in action or evidence of a debt. Reckard and others* v. *Madeira,* 1 *Rawle,* 328.

Judgment affirmed.