Johnson, Chancellor.
Issue the commission as prayed, (a)
The testimony of the witness was taken and returned accordingly ; but as the testimony of this same witness was afterwards regularly taken, it is unnecessary here to take any further notice of this examination de bene esse.
The defendants David English and wife, on the 8th of May, 1822, filed their answer, which sets out in these words: “ The answer of David English, and Lydia ‘English his wife, formerly Lydia Henderson, administratrix of John Henderson, to the bill of complaint of Janet Lingan and others. The said defendant saving *239 and resérving to herself now, and at all times hereafter, all and all manner of benefit and advantage of exceptions to the manifold uncertainties and imperfections in the complainant’s said bill of complaint contained, for answer thereunto, or to so much thereof as materially concerns these defendants, to make answer unto the said defendant Lydia English, answereth and-saith, that-she admits,” that James M. Lingan, by deed bearing date on the 8th of May, 1807, conveyed to John Henderson the tract of land as mentioned by the plaintiffs; that John Henderson died intestate leaving the heirs, and that administration was granted on his estate as stated by the plaintiffs; but, that no final account hath been passed, by which she can ascertain'whether the personal assets of the intestate are sufficient to pay all just debts against his estate. She further alleges, that about the first of December, 1798, James M. Lingan, being possessed of a grist and saw-mill, and other improvements, and of land adjacent, agreed with John Henderson to carry on the same in partnership ; which John Henderson carried on from that time until some time about the year 1807; by which considerable profits were made, which came to the use of James M. Lingan in his lifetime; that Richard Henderson, the father of John Henderson, died, leaving' five children, Janet, the wife of James M. Lingan, John Henderson, Sarah Henderson, Arrianna Sims, and Ann Henderson ; and was at the time of his death possessed of a large real and personal estate; upon which James M. Lingan and John Henderson took out letters of administration of the personal estate jointly; that James M. Lingan had possession, under those letters, of all the intestate’s personal estate; collected the whole of the debts, and enjoyed the benefit of the commissions allowed for administering the estate, Avhich amounted to a considerable sum. The defendant Lydia further answering; says, that John Henderson has never yet received any part of what he was entitled to from Richard Henderson's estate, but that the same has remained in the hands of James M. Lingan. She admits such an instrument of writing as that of the 10th of June, 1807, mentioned in the bill, was executed by John Hendersonbut she, understood, that the land was to be accounted for in the general settlement of accounts between them at the price for which they had agreed; that in the settlement of the account was to be included, not only the concerns of the partnership in which they were concerned, but also the accounts of the administration of the estate of Richard Henderson, and the proportionable share of that estate to which John Henderson was entitled. *240 But there has been no final settlement of accounts between James M. Lingan and John Henderson. The partnership between them was dissolved in 1807, and the books of the concern delivered to James M. Lingan, as surviving partner, after the death of John Henderson in 1809, for the purpose of collecting the debts of the partnership; that John Henderson received none of the profits of the partnership; and she thinks it may possibly be shewn, that James M. Lingan was considerably in debt to the concern. The defendant Lydia further answering, says, that she does not know what price was agreed on between Lingan and Henderson for the land mentioned in the deed; but admits, that John Henderson had the possession and enjoyed the profits of it to the time of his death, which happened on the 27th of January, 1809; that she does not know of Henderson’s having acknowledged, after the execution of the deed, that he had not paid for the land; that he was unable to pay for it, and tfiat he insisted that Lingan was, by the contract, to take it back in case Henderson was unable to pay for it. But she admits that John Henderson and James M. lingan died as stated in the bill, and that the plaintiffs claim is disputed at law by her as administratrix. The defendant David English saith, that he hath no knowledge of the matters charged in the bill, and therefore can neither admit or deny them.
It appeal’s by the affidavit subjoined to this answer, that it was-sworn to before a justice of the peace of Washington county, in the District of Columbia, by both of these defendants, David English and Lydia his wife; and added thereto is a certificate by the clerk of that county, that the person before whom the oath was. taken, was at the time duly commissioned and qualified as a justice of the peace. After the coming in of this answer, the plaintiffs filed a certificate of the clerk of the editors of the National Intelligencer, annexed to a printed copy of the order of publication, stating that it had been published as required. The plaintiffs then by petition prayed, that a commission might be issued to the persons therein named by them to take testimony, &c.
29th July, 1822. — Johnson, Chancellor. — Ordered, that a commission issue to the persons named as commissioners, unless the defendants shall name and strike commissioners, on or before the 20th day of August next.
No one having appeared to name and strike on behalf of the defendants, a commission was issued as directed, on the 8th of *241 October, 1822, to the commissioners named by the plaintiffs. In pursuance of this commission the parties were notified, &c.; when Henry Waring, a witness, was produced and sworn on the part of the plaintiffs. In answer to the first interrogatory, he says, that he lcnew James M. Lingan twenty-five or thirty years before his death, and John Henderson upwards of twenty years.
2d Interr. Were you or were you not acquainted with the circumstances relative to the sale of a tract of land described as a part of a tract of land called Zoar, situate in Montgomery county, in the State of Maryland, by General James M. Lingan to John Henderson ; — if yea, state the same particularly, whether the said tract of land was paid for by the said Henderson, what was the price for which the same was sold, and all the circumstances within your knowledge relative to the same ?
Answer. That a short time after Mr. John Henderson purchased of General James M. Lingan the farm he, Mr. Henderson, lately resided on, this deponent was going to Georgetown, and at the request of Mr. Henderson, mentioned to General Lingan that Mr. Henderson expected to pay no interest for two years from the purchase. General Lingan observed, that it was not so; one year clear of interest was as much as his circumstances would justify, or he would willingly give Mr. Henderson two years. This deponent then observed to General Lingan, there was, he believed, a misunderstanding which had better be fully explained. On this deponent’s return, he mentioned to Mr. Henderson what had passed between General Lingan and himself. About twelve or eighteen months, as well as deponent can recollect, before the death of Mr. Henderson, this deponent was at Mr. Henderson’s house; this deponent and Mr. Henderson were alone, and Mr. Henderson observed to this deponent, that he should not be able to pay General Lingan for the land; observing, that the produce of the farm was small; that General Lingan had agreed to take it back, if he found he, Mr. Henderson, could not .pay for it; and that he, said Henderson, would certainly move to the back country, (Cumberland this deponent believes was the place mentioned,) but it was disagreeable to Mrs. Henderson’s connexions to leave them. This deponent understood from Mr. Henderson he was to give General Lingan about thirteen dollars and one-third of a dollar per acre, or that the land cost him about that sum per acre.
3d Interr. Were you or were you not intimate with Mr. Henderson-, and had frequent conversations with him on the subject of *242 the purchase of said land; and whether did such conversations, and your intimacy, continue down to the time of Mr. Henderson’s death; if yea, state whether in all such conversations relative to said purchase, you understood from Mr. Henderson, the said land was or was not paid for; or whether the said John Henderson considered himself in debt for the purchase money of said land ?
Answer. That he lived a near neighbour to Mr. Henderson, and was very intimate with him, meeting him generally two or three times, a week, when this deponent was in the neighbourhood; that Mr. Henderson was in the habit of making full and free communications with this deponent relative to his affairs; they had frequent conversations relative to said purchase. This deponent always -understood from Mr. Henderson, that said land was not paid for, and that he, Mr. Henderson, would not be able to pay for said land. This deponent never understood from Mr. Henderson, that he claimed any thing from General Lingan, except what he, General Lingan, might receive from his, Mr. Henderson’s, father’s- estate.
4ih Interr. Did you or did you not hear Mr. Henderson state any thing as coming to him from the mill, which he and General Lingan held in partnership ; if yea, state the same, and when the partnership in said mill was at an end?
Answer. That he understood the partnership in the mill ceased, when General Lingan moved to Montgomery county, which was about the time Mr. Henderson went to live on the farm purchased of General Lingan. The proportion of the profits to which Mr. Henderson was entitled as partner in the mill, this deponent does not know; he is under the impression, from his own observation, and to the best of his recollection from conversations, that Mr. Henderson told him the mill had made little or nothing; and that little or no profits accrued from the partnership.
5th Interr. Did you dr did you not hear Mr. Henderson state, that he had purchased property for his own use, out of the partnership funds of the said mill; if yea, state what ?
Answer. That he understood from Mr. Hénderson,, that he purchased a negro woman and child from the partnership fund.
6th Interr. Were you acquainted with the handwriting of Mr. Henderson, and have you seen him write; if yea, state whether the paper now shewn to you marked A is in the handwriting, and the signature thereto in the handwriting of John Henderson ?
Answer. That the paper marked A, (the writing of the 10th June 1807, set forth in the bill,) now shown to him is in the hand *243 writing oí John Henderson, and that he has seen the said John Henderson write, and knows his handwriting.
1th Interr. Do you or do you not know whether Mr. Henderson drew his support for himself and family during his residence at the mill, and during the continuance of the partnership abovementioned from the partnership property ?
Answer. That he believes he did; except, that he has heard Mr. and Mrs. Henderson say, that the father and mother of Mrs. Henderson had frequently sent them supplies of provisions.
1st Cross Interr., by defendant David English. At the conversations mentioned by you, (in your answer to the second interrogatory of the complainants,) with Mr. Henderson about eighteen months before his death, was not Mrs. Henderson, now Mrs. English, present, and did not said conversation grow out of your advising Mr. Henderson to purchase an.adjoining estate then for sale?
Answer. That he does not recollect or believe, that Mrs. Henderson, now Mrs. English, was present at the time of said conversation, or that it grew out of circumstances as mentioned in said interrogatory.
8th Interr. on the part of the plaintiffs. Were the conversations you had -with Mr. Henderson (mentioned in your answers to previous interrogatories,) respecting the interest of the purchase money for the land, and his, Mr. Henderson’s inability to pay for the same, previous to the date of the deed ?
Answer. That he does not know the date of the deed; the conversation respecting the interest was previous to Mr. Henderson’s removing on the land; and that respecting his inability <to pay for the land after his removal on the same, and'about eighteen months before his death.
9th Interr. Was or was not Mr. Henderson put in possession of-the farm at tire time of the purchase, and has he or his heirs continued in possession ever since ?
Answer. That the farm called Zoar was included with the mill in the partnership, and Mr. Henderson was in possession of both mill and farm in the same right previous to the purchase; after the purchase he cultivated the farm in his own right, and sometime afterwards removed on the farm with his family, and he or his representatives have continued in possession ever since.
2d Cross Interr. on the part of the defendants. Do you know anything of John Henderson’s being employed for five or six years by General Lingan at his mill, on Seneca, before any partnership *244 was entered into ; was he of expensive habits; or do you suppose he saved part of his salary ?
Answer. That he understood from Mr. Henderson, that he was at the mill as agent for General Lingan several years, but how long this deponent does not know; that Mr. Henderson was very frugal in his dress, and in all respects a veiy frugal prudent man; that this deponent has understood, that his salary while at the mill was at least one hundred pounds per year.
3d Cross Interr. Were you acquainted with the terms of the purchase of the land ?
Answer. That he was not present when the contract for the land was made; that he acquired his knowledge of the purchase of the land from both Mr. Henderson and General Lingan ; that Mr. Henderson told this deponent he had given General Idngan a memorandum of the.purchase of the land, which this deponent understood was the paper marked A before referred to; and that Mr, Henderson and General Lingan both told this deponent they had done their business very loosely; that they had great confidence in each other; that the deponent understood from Mr. Henderson, that General Lingan had given him a deed for the property, and this memorandum was the only paper he had given as evidence of the purchase.
4th Cross Interr. Do you know how General Lingan came to make a deed, and have dower relinquished; is it not usual in Maryland to give bonds of conveyance wdien land is sold on credit ?
Answer. That he did hear some reason given for making the deed, but he can’t say now what that reason was; it was, this deponent understood, to answrnr some good purpose to Mr. Henderson; it is usual to give bonds of conveyance where land is sold in Maryland on credit.
5th Cross Interr. Have you any knowledge of General Lingan’s drawing supplies for his family provisions, his hay and feed for his horses from the mill and farm during the eight years of the partnership, from 1798 to 1807 ?
Answer. That General Lingan dréw hay, whiskey, flour, poultry, and perhaps other things that he wanted, from the mill and farm during the partnership; that this deponent-does not know how long the partnership continued ; that wheat was purchased at the mill; and that this deponent has been told by Mr. Henderson, that General Lingan furnished funds to pay for it.
*245 6th Cross Interr. From your knowledge of the land when Mr. Henderson moved on it, could there be any reasonable prospect of ever paying for it from its products ?
Answer. That he cannot say from his knowledge of the land whether there was or was not a reasonable prospect, when Mr. Henderson moved on it, of paying for it from its products; he thought the land was good land for that part of the country; it required improvement before it could be cultivated to advantage.
After the examination of the witness was thus closed, the solicitor of the defendants filed with the commissioners the following objection: “ On the part of the defendants so much of Mr. Waring’s deposition as goes to prove, by the parol declarations of John Henderson deceased, any promise or acknowledgment concerning the purchase money of the land in question; especially in so far as it goes to contradict or explain the receipt of J. M. Lingan on the deed for the purchase money; or the complainant’s exhihit A, referred to in said deposition, (purporting to be said John Henderson’s receipt for the deed, dated June 10th, 1807,) is objected to as inadmissible, as well under the particular provisions of the statute of frauds, as the general rules of evidence, by which evidence to contradict or vary a written instrument is excluded.”
The commission, with this testimony and these objections, were returned and filed on the 12th of July, 1824. Some time after which the plaintiffs by their petition stated, that they had by mistake alleged in their bill, that all the defendants were non-residents, when in truth the defendant Richard Henderson always has been, and is now a resident of Montgomery county in this State. Whereupon they asked leave so to amend their bill as to pray process of subpoena against him.
16th January, 1826. — Bland, Chancellor. — An order of publication, such as that prayed for by the bill of these plaintiffs, is allowed by the acts of assembly only as a substitute for a subpoena in certain specified cases, which are thus made exceptions to the general rule, which requires, that the regular process of the court should be prayed for and issued against all who are to be called in as parties and defendants to the suit; Hence it must appear upon the face of the bill, that the case is of such a nature as to authorize an order of publication warning a resident defendant to appear, or it must be expressly stated in the bill, that the parties therein named do not reside within the State, so as thereby to lay a proper foundation for praying for an order of publication warning them to *246 appear and answer. Where a husband and' wife, who neither of them reside within the State, are proposed to be made defendants, it is necessary that she should be warned by the order as well as her husband, otherwise her interests cannot be bound.(a) In all cases the granting of such an order of publication is almost as much a matter of course as the issuing of a subpcena ; because it is conceived that the plaintiff proceeds upon it at his peril, for if the case be such, or the defendant be not in fact a non-resident, so as to authorize such an order, any decree which the plaintiff may thus obtain must be considered as utterly void in point of fact.(b) These plaintiffs having discovered their mistake, do well therefore to have their bill amended in this respect. Let the amendment be made as prayed.
After which, on the 17th of November, 1826, the defendant Richard Henderson alone filed the following plea:
“ This defendant by protestation to all the discoveries and relief, in and by the said bill sought from or prayed against this defendant and others, doth plead in bar, and for plea saith, that by an act of assembly made and passed at April session in the year one thousand seven hundred and fifteen, entitled, “An act for limitation of certain actions, for avoiding suits at law,” it was amongst other things enacted, that all actions of trespass quare clausum fregit; all actions of trespass, detinue, sur trover, or replevin for taking away goods or chattels; all actions of account, contract, debt, book, or upon the case, other tiran such accounts as concern the trade or merchandize between merchant and merchant, their factors and servants which are not residents within this province; all actions of debt for lending, or contracts without specialty; all actions of debt for arrearages of rent; all actions of assault, menance, battery, wounding and imprisonment, or any of them, shall be sued or brought by any person or persons within this province, at any time after the end of this present session of assembly, shall be commenced or sued within the time and limitation hereafter expressed and not after; that is to say, the said actions of account, and the said actions upon the case, upon simple contract, book debt, or account, and the said actions for debt, detinue, and replevin for goods and chattels, and the said actions for tres *247 pass quare clausum fregit, within three years ensuing the cause of such action, and not after; and the said actions on the case for words, and actions of trespass of assault, battery, wounding, and imprisonment, or any of them, within one year from the time of the cause of such action accruing and not after. And this defendant saith, that neither he this defendant, nor to his knowledge or belief the said John Henderson deceased, this defendant’s father, did at any time within three years before, exhibiting the said bill or serving, or suing out process against the defendant to appear to and answer the same, promise or agree to come to any account for, or to pay, or any ways satisfy the said complainants, or the said James M. Lingan in the said bill of complaint mentioned, any sum or sums of money, for or by any reason or matters, transactions or things in the complainant’s said bill of complaint mentioned, charged, or alleged. All which matters and things this defendant doth aver to be true, and is ready and willing to maintain and prove as this honourable court shall award; and he doth plead the same in bar to the whole of the said bill, and doth humbly demand the judgment of this honourable court whether he this defendant ought to be compelled to make any further’ or other answer to the said bill.”
To this plea there was subjoined an affidavit of its truth; but there was no answer in its support denying the admissions and acknowledgments charged in the bill. The plaintiffs put in a general replication to this plea, and the case was thus, without the defendants Sarah Henderson and Janet L. Henderson having appeared, set down for final hearing, and the solicitors of the parties having been fully heard, the proceedings were submitted to the 'Chancellor for his final determination upon the whole case, as before set forth.
4th May, 1827. — Bland, Chancellor. — Having come to the conclusion, that the land must be -decreed to be sold for the payment of the purchase money, it is therefore ordered that this case be and the same is hereby referred to the auditor to make a statement of the purchase money now due.
On the next day the auditor reported, that he had found due from the estate of John Henderson deceased, to the estate of James M. Lingan deceased, the sum of $11,924 14, with interest on $5573 33, part thereof, from that time until paid.
8th May, 1827. — Bland, Chancellor. — -In whatever way this case may be considered, it is necessary, in the outset, to dispose of *248 the objections which the defendants have thought proper to make, and have returned with the commission. It is objected, that the parol" proof is inadmissible; first, under the peculiar provisions of the statute of frauds; and in the next place, on the ground, that by the general rules of evidence it should be excluded.
The first of these objections is not made to the competency of the witness, or to the regularity of the manner in which his deposition has been taken, but to the grade of testimony by which the plaintiffs have thus, proposed to sustain their case. The statute to which this objection refers, allows a party who may be charged by a contract, like that upon which these plaintiffs rely, to shield himself from imposition and fraud, by requiring of his opponent some unerring written evidence of such contract. Consequently, in all cases to which the statute of frauds extends, where the defendant, in his pleadings, rests upon his right to have the contract, by which he is so proposed to be charged, authenticated by written evidence, the plaintiff cannot obtain relief, unless he sustains his case by such proof; mere parol or verbal testimony, however strong, will not be sufficient. But the statute of frauds was intended for the benefit and protection of a party against whom a claim might be made. It does no more than extend to such a person a privilege which he may altogether waive, and put his defénce upon the merits of the case, as they may be shown by legal proof of any grade or description whatever. (b) And therefore it has been finally established, that if a defendant makes default, or makes his defence without expressly denying the whole contract, or in any other form, without relying upon the statute of frauds, he thereby tacitly waives its benefit, and cannot be permitted to take advantage of it after-wards or at the final hearing; so that if the contract should be sufficiently sustained by parol proof, the court will grant relief, although written evidence of no part of such contract may have been produced, (c) But these defendants have, none of them, in any form of pleading expressly denied the whole contract, and relied upon the statute of frauds. This objection cannot be considered as forming any part of those allegations upon which an issue between these parties has been or might have been joined. It is nothing more than a sort of exception to the testimony which has been improperly foisted in with the return of the commission, *249 and can be considered at most as standing only as if made in argument at the final hearing. But, as such, it is wholly inadmissible in any way; and particularly for the purpose of excluding any proof merely because of the inferiority of its grade, or because of its not being such written evidence as might have been required had the statute of frauds been specially relied upon.
In the next place, apart from the statute of frauds, the admission of this testimony is objected to on the ground, that it cannot be received in so far as it goes to contradict.or explain the receipt of J. M. Lingan on the deed for the purchase money, or the memorandum of the 10th of June, 1807. The evidence given by this witness is, however, introduced, not to contradict or vary any part of the entire contract, but to supply deficiencies and to prevent fraud, by shewing that of which the deed of conveyance says nothing, and to corroborate, explain and fortify that of which the memorandum of the 10(th of June speaks ambiguously. Taken in this point of view, this parol proof may well and consistently stand with the deed, and so much of the whole contract, as has been actually reduced to writing.(d) A receipt, not under seal, although it be strong, is not, in all cases, conclusive evidence of the fact;(e) but a receipt for the purchase money, such as this, endorsed by J. M. Lingan,- the grantor, for the sum of five dollars, the nominal consideration, on the back of the deed, looking to the usage, in such cases, of making an absolute conveyance, of which such a receipt is a mere formal part, leaving the purchase money in fact unpaid, is considered, in equity at least, as being, in itself, evidence of the lowest order.(f) This second objection, as well as the first, must therefore be totally overruled.
It has been long and well established as a rule of law and equity, that the plaintiff can only obtain relief upon the strength of his own title as it existed at the time of instituting his suit, and not on the weakness of the title of his adversary, or the imbecility of his defence. (g) In general, if the facts stated in the bill are not in substance sufficient to entitle the complainant to the relief prayed, *250 he cannot resort to the answer of the defendant, the proof taken in the case, or any extraneous matter to supply the defect,(h) for no evidence can be- received which is not applicable to some one of the material allegations of the bill ;(i) hut in order to remove any doubt as to what was intended by any indirect or ambiguous charge in it, its interrogating part, as well as its prayers for relief, may be material and proper to be considered for that purpose.(j)
The principal facts of which this case is composed, as set forth by the bill, and upon which alone the plaintiffs can have any claim, to relief, are few and clear. They are these: — James M. Lingan, in May 1807, conveyed four hundred and twenty acres of land to John Henderson, in fee simple, who then, or at any time after, gave no valuable consideration for it, but having obtained possession, retained it until Ms death. Which land Henderson was to account for with Lingan, either by holding it in trust to be reconveyed to Lingan, or by holding it as a purchase, and paying for it at the rate of thirteen dollar's and thirty-three and one-third cents per acre, with interest thereon commencing one year after the day of sale; hut which purchase money has not been paid: of which facts the plaintiffs, having no positive proof, sought a discovery from the defendants. Some years after entering into this contract, John Henderson died intestate, leaving a considerable estate, which passed into the hands of the defendants as his legal representatives. James M. Lingan also thereafter died, leaving the plaintiffs his legal representatives. These are all the material facts stated in the bill.
After a plaintiff has thus distinctly set forth the facts of which Ms case is constituted, shewing it to be one which may properly be brought within the cognizance of a court of equity, he may then proceed, in his hill, to specify and ask for that kind of relief to which he thinks himself entitled. But if he expressly specifies the- relief which he proposes to obtain, and prays for none other, either generally or specially; and the law will not allow the court to give relief of that kind, or the peculiar nature of his case-will not warrant the granting of any such relief, then he cannot he relieved at all, unless he consents to amend or alter the prayer of *251 bis bill; for otherwise it must be dismissed. But, if the bill prays generally for such relief as is suited to the nature of the case, then, under such general prayer, the court may, regardless of, or without any special prayer, grant any such relief as may be allowed by law, in consistency with the nature of the case, whether the plaintiff asks for it orally or not;(k) and even although it should be more beneficial to him than that which he has specially prayed for ;(l) of which the. defendant is held to have been sufficiently notified, and is presumed to have been prepared to meet. For it is in many cases as much upon a defendant to look to what is prayed against him as to what is stated. (m)
These plaintiffs have by their bill made to the court three distinct prayers; first, that the administratrix of John Henderson be compelled to pay the purchase money, with interest; secondly, that the heirs of John Henderson reconvey the land; and thirdly, that they, the plaintiffs, may have such relief as to tire court shall seem meet and consistent with equity. The two first of these prayers have been made to correspond with the alternatives of their case; either that the contract between James M. Lingan and John Henderson was to be considered as a sale, in which case the plaintiffs ask for the payment of the purchase money, or that, if it should be treated as a trust, then the heirs of Henderson should be ordered to reconvey the land to the heirs of Lingan. But as the peculiar nature of the case might suggest the propriety or necessity of granting relief in some other than either of those two specified modes, they have, in general terms, prayed for such relief as may be deemed proper. Consequently the plaintiffs may be relieved in one way or other, unless there should be found-to be something in their bill to prevent it; or unless the claim of these plaintiffs should appear to have been in some way barred, or should be found to be not sufficiently authenticated by proof.
This case had its origin in a contract between James M. Lingan and John Henderson. Contemplating it therefore as an agreement between them alone, as now living, to be, as stated in the bill, either a conveyance of a tract of land in trust for a particular purpose, and then to be reconveyed; or as an actual sale of’ so much land to be paid for at a stipulated price, still it is one entire *252 indivisible contract, utterly incapable of' being broken up into distinct parts. The subject of it, taken in either alternative, may be divided. The land may be reconveyed in separate parcels, and the purchase money may be satisfied in many small payments; but, yet the one original contract covers all, and can exist only as a ivhole. The parties themselves may alter, relinquish, or receive satisfaction for the whole or any part of it, at their pleasure; but, to the court, it is a sacred unalterable whole, which must stand or fall together.
A plaintiff cannot be permitted to put his case in the alternative, so as to evade any of those settled rules which have been established by the. court for the protection of its suitors from unreasonable vexation; as by giving to his bill such a' disjunctive frame and alternative prayers, as, that it may be treated either -as a bill of review, or as a bill of revivor and supplement, so as thereby to elude the protective operation of those rules by which a party is restrained from filing a bill of review at his pleasure, (n) And as a plaintiff must state a clear case of equitable jurisdiction, much less can he be permitted to call on the court to act upon a hypothetical bill praying relief, either at law or in equity; since he must distinctly determine for himself whether his case is at law or in equity, (o) But it is not irregular to bring a bill in which the case, taken in any way, being within the jurisdiction of a court of equity, is stated in the disjunctive or with two different aspects ; so that if the plaintiff fails to sustain by his proof the one alternative, he may, by authenticating the other, obtain the relief he seeks, (p) Here, however, the alternative presented to the court is that of a conveyance in trust; or an absolute sale, with an incident equitable lien; so that, whether the plaintiffs sustain by their proof .the one alternative or the other, they have, by their bill, presented a case which, without invading any rule, comes entirely within the cognizance of a court of equity.
But the originally contracting parties were both of them dead when this bill was filed. The plaintiffs are the legal representatives of James M. Lingan, deceased; and the defendants legally represent the late John Henderson. The rights, as well as the liabilities, under this contract, have thus passed into other hands and devolved *253 upon other persons. The plaintiffs derive their right to the thing in controversy from James M, Lingan ; they stand exactly m his place, and can all of them together claim nothing more than what might have been demanded by him. Any one of them may assign, or release his or her own undivided right, so far as it extends, without prejudice to the others; which transfer would, however, only operate so as to substitute the assignee for the assignor; and consequently this contract, as stated in the bill, is as entire and as utterly indivisible, as these plaintiffs have succeeded to it, as it was in the hands of James M. Lingan, the originally contracting party.
Then, on the other hand, the liability to which John Henderson was subject, by this contract, has devolved upon these defendants as his legal representatives. Considering it as a conveyance in trust, his administratrix is liable for the rents and profits, as for so much personalty, gathered by her intestate from the real estate which had been so conveyed: and his heirs are liable; because that real estate itself has, by operation of law, been cast upon them. In the other alternative, considering this contract as a bargain and sale, Henderson’s administratrix is liable, as the holder of his personal estate, for the purchase money as one of his debts, for the payment of which, that part of his estate is primarily liable; and his heirs are liable, because the real estate itself, encumbered with an equitable lien for the payment of the purchase money, has passed into their hands; and also because of any other real estate of the intestate which may have descended to them, in case his personal estate may be found insufficient to pay his debts. But, it must be recollected, that the liability of each, and of all of these defendants is only in respect, and to the extent of the assets which may have come to their hands from the deceased contractor, who they thus far and no farther represent. But to the amount, that may be necessary to give to the plaintiffs complete and entire satisfaction, all the estate of John Henderson deceased in the hands of these defendants is liable, and no part of it can, by any act of any one, or all of them together, be disengaged from that liability without making to the plaintiffs a full and entire satisfaction. The court may, in some cases, like this, so marshal the bearing of the liability, provided it be attended with no delay or risk to the plaintiffs, as to place its burthen equally upon every part, or upon that portion of the estate by which it ought first to be borne; but as every part of the estate of the deceased is liable for the whole claim of the plaintiffs, no portion of it can be discharged until they have *254 been fully satisfied. Hence it is clear, that this contract as against 'these defendants is as absolutely indivisible and incapable of being broken up into separate parts by them, or in their favour by the court, as it was against John Henderson during his lifetime.'
It appears, that, of these five defendants, David, English and Lydia his wife, alone have put in such an answer as the bill calls for; that' after they had done so, and the bill had been amended, the defendant Richard Henderson filed a plea of the statute of limitations, to which answer and plea the plaintiffs put in a general replication ; and that the order of publication has been published as required, so that the bill may now be taken pro confesso against the absent defendants Sarah Henderson and Janet L. Henderson. In this situation the case has been brought before the court for a final decree upon the whole matter in controversy.
The defence of Lydia English, goes to the whole; because she admits, that such a contract as is stated in the bill was actually made, but avers, that it was satisfied; in others words she confesses and avoids the whole charge; and therefore, if her matter in avoidance be true, the plaintiffs can have no'relief against her; because she would thus shew, that the whole claim had been actually satisfied. The defendant David English is passive; without expressly denying anything, he admits nothing; and therefore, unless the plaintiffs establish their claim, as set. forth, they can have no relief against him to any extent whatever. The defendant Richard Henderson rests his defence upon a plea of the statute of limitations. This defence also goes to the whole. It admits, that although a contract may have been made as alleged, yet it has been barred by the lapse of the prescribed length of time; and therefore, if this plea be properly applicable to the case and true, the plaintiffs can have no relief against this defendant, Richard Henderson. But the defendants, Sarah Henderson and Janet L. Henderson, having failed to answer, the bill may be taken pro confesso against them, and any relief may be awarded to the plaintiffs which can, under their general prayer, be sanctioned by the nature of their case.
Whence this important question necessarily arises ; whether the court, in any suit against a plurality of defendants, where any one of them makes, and sustains such a defence as goes to the whole, can pass a decree against any other of them, who has made no such defence, or as against whom the bill might otherwise be taken pro confesso ?
*255 Although the pleadings in this court are much more informal and loose than in courts of common law, yet they must be substantially sufficient in this- as well as in all other courts; for otherwise the tribunal would-have no means of ascertaining what was the real nature of the matter in controversy, nor of applying to it the rules of law by which it was to be decided. It is not necessary, that a plaintiff or a defendant should here, as in a court of common law, strictly adhere to any prescribed form of stating his cause of complaint, or ground of defence.(q) But it is in all cases as indispensably necessary here, as in a court of common law, that the plaintiff should set forth fully and substantially a cause of action or ground of corpplaint as then existing at the time' of the institution of his suit; with this addition here, that it is in some essential particular such a case as comes properly within the cognizance of a court of equity; for if, on the final hearing, the. case should not appear to be one of that description, the plaintiff can have no relief, and the bill must be dismissed, (r) If it appears upon the face of the bill, that the case is not one of that description, the defendant should demur; yet if he fails to do so, the court can grant no relief, but must order the bill to be dismissed, (s) Although the case presented may be such an one as, if true, and the bill had set forth the whole truth and nothing but the truth, would entitle the plaintiff to relief, yet if the defendant shews, by way of plea or answer, that there are other facts making a necessary component part of it, which have not been set forth, and which give to it an entirely different complexion, the plaintiff cannot be relieved; because it is thus shown, that he has no cause of action, nor any just grounds for asking relief in the^case he specifies. So on the other hand, if the defendant shews, that some facts have been stated which in truth compose mo part of the case, so as to give to it an equitable character which' does not belong to it, the plaintiff can have no relief, because his case is not substantially that upon which he has asked it.
Hence, as it is the cause of action, as substantially stated in the bill, upon which alone the court can grant relief; and as, if, upon its face, it appears to be one of which the court cannot take cognizance i and as, if the facts, thus stated, be not substantially the whole truth, without any material suppression or addition, the *256 plaintiff cannot be relieved; so likewise, if no such cause of action ever did exist; if it did once exist, but is shewn to have been, since, and before the institution of the suit, wholly barred, satisfied, or extinguished in any way whatever, the plaintiff cannot have any relief; because it appears, that when he instituted his suit he had no cause of action, no just ground of complaint whatever as alleged. For it is a fundamental principle in the administration of justice in whatever form, or by whatever tribunal it may be administered, that where there is no cause of complaint there can be no foundation for granting relief.(t)
But however self-evident this principle may appear to be, when contemplated in relation to a suit brought by one plaintiff against no more than one defendant for relief, upon a simple, entire, and indivisible cause of suit; yet, it does not appear to .have been so readily and distinctly perceived where the cause of action bus been compounded of various items; or where the satisfaction for the cause of suit is asked for in damages, or to an indefinite amount to be ascertained by an estimate of the nature and extent of the injury; and especially where that complexity has been increased by the relief being sought from a plurality of defendants. The cause of suit, at law as in equity, may be made up of a variety of parts joined together as one whole, or it may be an injury which can only be satisfied by some pecuniary equivalent; or the cause of suit may be the right to a subject which is in itself divisible; or it may be that the several defendants, although interested and connected as privies and parties, are yet liable only disjunctively, or in separate proportions.
Thus where the next of kin of the deceased filed their bill to recover their respective distributive shares of the surplus of certain portions of his personal estate, alleging, that he had died intestate as to those portions of it, and on the hearing it being shewn, that he had died intestate only of his silver plate,, the plaintiffs had relief as to that, but as to the rest the bill was dismissed. The defence made and sustained going to a part only of the subject claimed, it appeared, that the plaintiffs had a valid cause of suit, and were therefore relieved.(u) So, in general, if a man brings an action for two things, for the recovery of both of which the action, will lie, but on the trial fails to sustain his claim to one of them ; *257 yet he may have judgment for the other, his right to which he establishes, (v) Or suppose, that as a cause of suit the plaintiff alleges, that he has a right to a hundred acres of land which has been withheld from him; there, as the subject in controversy is divisible in its nature, the defendant may take defence for only a part, or he may defend for the whole; but if the plaintiff establishes a title which covers a less number of acres, he may be relieved; because so far he shews, that he has a sufficient cause of action. Or suppose the suit to have been brought against two or more defendants, each of whom makes a separate defence, and the defence of one, applicable to himself alone, shews, that he ought not to be charged; and the others fail in their defence; the plaintiff may have his entire relief against them, although the bill must be dismissed as to the one who had successfully defended only so far as he himself was charged ;(w) because no defence going to the whole, and showing, that the plaintiff had no cause of action having been established, he may be relieved as against all the other defendants who had either made no defence, or failed to establish either any such general defence as went to the whole, and to show that the plaintiff had no cause of suit whatever; or any such particular defence as went to show, that although there might be such a cause of action against others, yet he, that defendant, could not be-charged by it.
In these and in all similar cases, where the cause of action is made up of several distinct items; or in so far as the subject of it is divisible in its nature ;(x) or where it bears upon the several defendants in a disjunctive, separate, or limited manner, the relief granted may be accordingly for the whole or for a part only of that which is the subject of the cause of suit; or it maybe granted against all the defendants, or against some or one of them only, or against each pro rata, or in different proportions, (y) But in all cases, in equity as well as at law, the relief is, and can only be granted, because of its having been admitted or established, that there is and was, when the suit was instituted, a valid and existing cause of action, of which the court might take cognizance, and which by no defence, going to the whole, had been shewn by all, or any one of the defendants to have been entirely barred, satisfied or extinguished in any way whatever. These are general well *258 established elementary principles by which all courts of justice, as well those of common law as of equity, are governed. They are merely modifications of the one great fundamental rule, which declares, that in so far, and no farther than there is a cause of com-, plaint can there be any foundation for relief.
This matter is thus explained and exemplified by Lord Coke: “ In a plea personal against divers defendants, says he, the one defendant pleads in bar to parcel, or which extendeth only to him that pleadeth it, and the other pleads a plea which goeth to the whole, the plea that goeth to the whole, that is, to both defendants, shall be first tried; and of this opinion was Littleton in our books, for the trial of that goeth to the whole; and the other defendant shall have advantage thereof, for in a personal action the discharge of one is the discharge of both. As for example, if one of the defendants in trespass plead a release to himself, which in law extends to both, and the other pleads not guilty, which extends but to himself; or if one plead a plea which excuses himself only, and the other pleads another plea which goeth to the whole, the plea which goeth to the whole shall be first tried; for, if that be found, it maketh an end of all, and the other defendant shall take advantage hereof, because the discharge of one is the discharge of both. But in a plea real it is otherwise; for every tenant may lose his part of the lands. As if a prmcipe be brought as heir to his father against two, and one plead a plea which extendeth but to himself and the other pleads a plea which extends to both, as bastardy in the demandant,- and it is. found for him, yet the other issue shall be tried, for he shall not take advantage of the plea of the other, because one joint tenant may lose his part by hismisplea.”(z)
In an action of trespass for taking certain goods and chattels, against two defendants, the one pleaded a special justification, and the other not guilty; upon both of which pleas issue being joined, a jury was sworn, who found a verdict for the defendant on the special plea, and found the other defendant guilty, and assessed damages and costs. Upon a motion in arrest of judgment it was held, that if the one defendant justifies by the gift of the goods so as to destroy the plaintiff’s title, and shews, that he could not have cause of action, which is found accordingly for that defendant, although the other, defendant be found guilty, yet no judgment *259 shall be against him, because it appeared to the court the plaintiff had no cause of action. (a)
An action of covenant was brought against two for not building a house for the plaintiff according to their covenant; judgment was against one by default; the other pleaded performance, and it was found for him. Whereupon it was moved in arrest of judgment, that no judgment nor writ of enquiry of damages could be against him, against whom the judgment was by default; because, although in trespass, one may be guilty and the other not; yet in covenant, debt or other contract where it is joint, the one cannot be convicted without the other; and here by the verdict for one of the defendants, that the covenant was performed, it appeared, that the plaintiff had not any cause of action; and therefore should not have judgment; and so should it be, although the defendant against whom the judgment was by default had confessed the judgment. It was also resolved, that the defendant should have costs on the verdict against the plaintiff, for now it was a verdict against him, and that he should have neither costs nor damages against the other. (b)
In an action of trespass brought by Biggs against Benger Greenfield for entering his close and taking away his goods and ohattels, judgment was given against Benger by default; but Greenfield as to the force and arms pleaded not guilty, upon which issue was joined; and as to the entry and taking away of the goods he pleaded, that Benger had leased to the plaintiff the close therein mentioned for a certain rent, which being in airear, he, the defendant Greenfield, took the goods as a distress, and thereupon the plaintiff requested and gave him license to sell the goods, and to pay the money arising thereby to the-defendant Benger in satisfaction of his rent, which was done accordingly. Upon which issue was also joined; and a jury having been sworn to try the issues and assess damages against Benger, they found a verdict on the issues for the defendant Greenfield, and assessed damages against Benger. Upon a motion in arrest of judgment against Benger it was held, that this case of a license cannot be distinguished from a gift of goods, or a release which destroys the cause of action as to all the defendants; and therefore the judgment was arrested as to both.(c)
*260 Upon this general rule, that the shewing in any way whatever, that the alleged cause of action never existed, or that it had been extinguished, furnishes a complete answer to all claim to relief, it has been settled, that if an obligee, by his will, makes one of the obligors his executor, and dies, the action at law is thereby discharged as against all; because there being at law but one duty, extending to all the obligors, the discharge, or suspension of the action as to one, extinguishes it as to all.(d) And although in equity, and by the act of Assembly, the debt due from such executor is to be considered as assets in his hands, yet the principles of law have not been altered in any other respect whatever.(e) If there be several executors they may plead different pleas; each of them may put- in, for himself, none other than the plea of plene administravit; and as such a defence does not controvert the existence of the cause of action, but merely denies a sufficiency of assets wherewith to satisfy it; if the one of such pleas should be found for and the other against him who pleads it, yet the plaintiff may have relief against that one executor, although his suit must be dismissed as against the other. (f) But if, in addition to such a plea, one of the executors should plead a release, or rest his defence upon any matter going to the whole cause of action, and it should be found for him, the plaintiff must be barred, and can have no relief whatever; although the other executor had even acknowledged the action, or made default; because it would appear upon the whole record, that the plaintiff had in fact no cause of action. (g)
The wife, executrix to her husband, married a second husband. A bill is exhibited against them to discover the trust; the husband and wife disagree in the matter, and put in severally their answers; the husband denied the trust, but the wife confessed it. The cause proceeded to hearing, and the -plaintiff proved the trust only by one witness, which the plaintiff insisted on with the wife’s confession, to be sufficient; the matter being but in that wherein she was concerned as executrix. But the bill was dismissed, quia the wife’s answer shall not bind the husband, (h) But upon a bill brought against husband and wife for lands held by them in her right, the husband having made default, the wife got an order to. answer separately; and thereupon answered, setting forth a title to herself *261 of the inheritance. It was held, that there could be no decree against her; but the bill was taken pro confesso against the husband only, and he was ordered to account for all the profits of the land received since the coverture, and the profits which should be received during the coverture, &c.(i)
Whence it appears, that in equity as at law, where the defence made by any one defendant extends only so far as to cover nothing more than the interest of him by whom it is made, the plaintiff may yet have relief if he establishes his claim against the other defendants ; but that where the defence made by one defendant goes to the whole cause of complaint, and the plaintiff fails to establish his case in opposition to such defence, he cannot be relieved in any way whatever, although his claim should be confessed by the other defendants.
In a case where Whistler had given his note to Jolliffe for the payment of $4500, in Turkey, where Jolliffe continued to reside some time before his return to England, Whistler, after the giving of this note, made his will, appointing Pitt his executor, and died. Some time after Pitt having come to England and qualified as executor, Jolliffe filed a bill in chancery against him, and some others, the creditors of his testator, for an account of the assets and for the recovery of this debt. The defendant Pitt submitted to do as the court should direct; but the defendant creditors insisted the plaintiff was bound by the statute of limitations. The Chancellor inclined to the opinion, that the statute of limitations was not to take place. The time till Whistler’s death being answered, and the executor being beyond sea, the statute of 4 and 5 Anne, c. 16, s. 19, took place, which saves the right of action as well where the debtor is beyond sea as where the creditor is beyond sea. Whereupon the case was referred to the master to take an account and to allow the plaintiff’s claim, &c.(j) This is all that is said by the court in relation to the bearing of the several defences; whence it is evident, that had not Jolliffe’s claim been taken out of the statute of limitations, as relied on by only a -part of the defendants, he could have had no relief, even although the executor had submitted to do as the court should direct.
A feme covert before her marriage, with the consent of her then intended husband, conveyed an estate to her separate use, and after her marriage she borrowed £25 upon her bond: ten years after- *262 wards she made her will, thereby giving several specific legacies, and made A and B executors; on her death her husband possessed himself of moneys which she left, to the amount of ¿224; after which the obligee in the bond brought a bill against the executors and the husband; and one of the executors confessed assets; but the husband insisted upon the statute of limitations.
Master of the Rolls. It is true, that the bond given by the feme covert is merely void, and in that respect differs from a bond given by an infant, which is only voidable. It is likewise true, that the defendant, insisting upon the benefit of the statute of limitations by way of answer, shall, at the hearing, have the like benefit of the statute as if he had pleaded it. But in this case, all the separate estate of the feme covert was a trust estate for payment of debts, and a trust is not within the statute of limitations. From whence it seems as if the plaintiff ought to be at liberty to prosecute all the defendants, in order to be paid out of the separate estate left by the feme covert, to which purpose such part of the separate estate, as is undisposed of by the will, ought to be first applied. In the next place, if that be not sufficient, the creditors are to be paid out of any money-legacies given by the feme covert; and lastly, supposing there is still a deficiency, all the specific legatees ought to contribute in proportion. Neither can it be material, so as to excuse the other defendants, that one of the executors of the feme covert has admitted assets; for he might admit assets, and yet have none, nor any estate of his own. And it would not be reasonable, that this should prevent the plaintiff, the creditor, from prosecuting the other executor, or the husband, who may have possessed themselves of part of the separate estate, and ought to be responsible. For which reason, let all the executors account for what they respectively have in their hands of the feme covert’s personal estate, or the produce thereof, and let the same be liable in the order aforesaid, reserving costs. (k)
From this case two points, in relation to the matter under consideration, seem to have been treated as settled: first, that a plea of, or a reliance in answer upon the statute of limitations by one defendant alone, if sustained, would be a sufficient bar of the whole, although the claim should be admitted by all the other defendants; and secondly, that the confession of assets by one executor, without actual satisfaction, is no bar to a recovery against *263 the other executor; because until the entire cause of suit has been barred or satisfied, each executor is liable for the whole, so far as he may have assets. And so upon a bill of revivor against several, although but one of the defendants by his answer insisted, that he had no title to revive: it was held, that the plaintiff must at the hearing shew, that he had a good title to revive, or he could take nothing by his suit.(l)
A bill was filed in the Court of Chancery of New York, by Morris and Mowatt, as assignees of Sands, a bankrupt, against Clason and Stanly. From which case, among a variety of other circumstances, it appears, that the defendants had been partners in trade, and as such had obtained a judgment at law against Sands, and had also obtained a right to another judgment against him by assignment. After which Sands became a bankrupt; and some time before the institution of this suit, the partnership between the defendants had been dissolved. The bill prayed a discovery of what was due to the defendants, or from Clason to Sands, &c.; that satisfaction might be entered up on the judgments; and that an injunction issue to restrain fhe defendants from proceeding by execution, &c. The defendant Clason put in his answer relying on a variety of facts and circumstances in his defence, &c. Stanly, residing out of the State, the bill, as against him, was taken pro confesso, for want of appearance, after a regular advertisement to come in and answer. Testimony having been taken, and the case heard, it was decreed, that the two judgments were to be deemed fully satisfied, and to be so entered accordingly. From this decree Clason appealed, and the Chancellor, in assigning the reasons for his decree to the appellate court, says, speaking of the circumstance of Clason only having answered and made defence in the Court of Chancery, that “ There was evidence, that the copartnership between Clason and Stanly was long since dissolved; and the bill having been taken pro confesso against Stanly, which entitled the plaintiffs to a decree against him, and the proceedings against the defendant Clason- concluding to the same point, it was useless to trace what might have been the effect of a different state of things.”
The judge, with whose opinion a majority of the members of the appellate court concurred, among other things, says, in relation to the matter under consideration in this case — “ The first question *264 which I have chosen to consider, is, as to the effect of the bill’s being taken pro confesso against Stanly, circumstanced as this caséis. If Stanly was the sole defendant, or had distinct rights, I agree that his default in appearing and answering would have been an admission of the facts charged in the bill. In Davis v. Davis, 2 Atk. 21, Lord Hardwicke says, with great propriety, that the taking a bill pro confesso, in equity, is analogous to taking the declaration for true, where the plea or answer of the defendant is insufficient. He was there, however, speaking of a sole defendant; and, I believe, not a case can be found in which it is insinuated, that where there are two defendants having a joint interest, and one appears and answers, and disproves the plaintiff’s case, that the plaintiff can have a decree against the other who had made default, and against whom the bill was taken pro confesso. It would be unreasonable to hold, that because one of the defendants had made default, the plaintiff should have a decree, even against him, when the court is satisfied, from the proofs offered by the other, that in fact the plaintiff is not entitled to a decree. Though I have not met with cases in equity to the point, yet pursuing the analogy between proceedings at law and in equity, we are not without very clear authority; for it is a well settled principle of law, that in actions upon contracts, the plea of one defendant enures to the benefit of all; for the contract being entire, the plaintiff must succeed upon it against all or none; and, therefore, if the plaintiff fails at the trial upon the plea of one defendant, he cannot have judgment against those who let judgment go by default. It would require the most binding authorities to induce me to yield my assent to such a proposition as that set up by the respondent’s counsel; and, indeed, the result would be extraordinary, for if one defendant entitled himself to a decree, where the interest is joint and inseparable, a decree must be made in his favour as to a moiety of the matter in issue, and against the other who made defaidt for the other moiety; that is, the plaintiff would get one half of a decree, and the other defendant, the other half. It cannot be so ; we must consider Clason’s defence as enuring to the benefit of Stanly.”
The judge, with whom the minority concurred, says in relation to this matter," the two judgments are, therefore, in force, and entitled to priority of satisfaction. I think, however, that the appellant ought not to be allowed more than a moiety of these judgments. For it appears from his answer, that the consideration *265 foí the assignment of the one was paid by Clason and Stanly. And although the assignment was made to Clason alone, yet he must be deemed a trustee for Stanly as to a moiety; the other judgment stands in the name of Clason and Stanly. They are, therefore, to be taken as joint owners of both judgments. And the bill having been taken pro confesso against Stanly, is an admission, on his part, of satisfaction so far as his interest is concerned. The answer or defence of Clason cannot enure to the benefit of Stanly; 1 Caines’ Cas. in Err. 121. I have not met with any case in the books where a bill has been taken pro confesso against one only of several defendants. But in order to give the force and effect to this default, which is contemplated by the statute, the proceedings must, thereafter, be considered in the nature of separate suits, especially where the nature of the controversy is such as to admit of distinct consideration, and separate relief. Where the defence set up goes to the essence and foundation of the claim made by the bill, and that is wholly destroyed by the party appearing, there may be some difficulty in enforcing the decree against the party who has suffered the bill to be taken pro confesso. But in the present ease, we may consider Clason as attempting to enforce the collection of a debt due to himself and his co-partner, when his co-partner has acknowledged satisfaction as to his claim. If Stanly is to be considered jointly interested with Clason, it was no doubt competent to him to release or acknowledge satisfaction, so far as his interest is concerned, and his default as equivalent to such acknowledgment ; and his rights are to be viewed in the same light as if he had appeared and answered, and confessed the facts stated in the bill. No injustice is done to Clason ; a moiety is all he shews himself entitled to. If the sole and exclusive right to the partnership debts has been transferred to him, he ought to have shewn it. This answer, it is true, states a dissolution of the partnership in 1803; and that by an agreement between him and Stanly all the property, debts, and effects of the co-partnership became vested in him solely. The dissolution of the partnership is proved, but there is no evidence of the agreement in relation to the partnership concerns.”
Upon which the Chancellor’s decree was, by a majority of the court, reversed in toto; but the minority proposed to reverse it only to the extent of Stanly's interest. (m)
*266 Whence it appears, that in the view which the Chancellor took of this case he had deemed it entirely useless to trace what might have been the effect, if Clason had succeeded in establishing his defence; because as he had failed to do so, and the taking of the bill pro corvfesso against Stanly concluded to the same point, it was entirely unnecessary to say how far Clason,s defence, if it had been established, should enure to the benefit of Stanly, notwithstanding his default. But it is clear, that the effect of a valid' defence having been made by one defendant, and the bill having been taken pro confesso against the other, was necessarily involved in the final judgment according to either of the views taken of the case by the appellate court. And from what was said by them in regard to the general principle, that where one of two or more defendants makes a defence which so effectually goes to the whole as to shew, that the plaintiff had no cause of suit, nor any foundation for a legal complaint, he can have no relief even against the defendant as to whom the bill had been taken pro confesso, it is perfectly manifest, that the court were unanimous % and that the only difference of opinion among them, in this respect, was, not as to this general principle; but how far the case, then before them, could be considered as one in which the whole cause of suit had been met and repelled by tire defence of Clason. The majority of the court held, that his defence did embrace the whole, and was, therefore, a conclusive bar to any relief as well against Stanly, as against Clason. But the minority of the court were of opinion, that Clason’s defence did not properly and necessarily comprehend any thing more than his own separate claim; because he might he regarded, in that case, as attempting to enforce the payment of the whole of a debt due to himself and his partner, when his partner had, by his default, which was equivalent to a release, acknowledged satisfaction to the amount of his share of the debt; and therefore, although the defendant Clason had fully sustained his defence; yet, as his claim extended no further than to. a moiety of the debt, according to the terms of the partnership between him and Stanly, and the manner in which it had been dissolved ; the plaintiffs might well have the decree affirmed against Stanly alone. This then is a solemn adjudication in equity directly upon the point in question; and it is a decision which must be admitted to have great claims to respect, as well because of the sound legal reasoning by which it is sustained, as because of its *267 'harmonizing so entirely with all the established principles of law which have any bearing upon the same subject,
It appears then, that there are, at common law as well as in equity, a variety of cases in which the plaintiff, either because of the peculiar nature of his cause of action, or because of the nature of the several defences made to it, may obtain relief against some one or more of the defendants, although, he may totally fail in his suit against all the others. In equity this more frequently happens than at law; but in all cases, it arises not from the mere manner or form of proceeding, but from the substantial nature of the case itself, or of the defence which may have been made.(n)
In all cases where there are a plurality of defendants, they are each of them charged as such; because of their having an interest in or being jointly or otherwise liable to the alleged cause of suit. Hence it is in general true, that the answer of one defendant cannot be read in evidence against another; because in such case there is no opportunity for cross examination; and also because each defendant, considered as a necessary party, must have some interest in the event of the suit; and is, therefore, an incompetent witness.(o) But there are exceptions to this general rule; as where the defendant against whom the answer is proposed to be read claims under him who made it; for a defendant cannot deny the title as thus set forth by him under whom he claims ;(p) or where the defendants are partners in trade, and as such are then competent to bind each other by such a contract as that of which they speak.(q) So too in the peculiar case of corporations, oné or more of its officers may be made co-defendants, whose answers may be received against the body politic; and so likewise as to arbitrators and attorneys, whose answers may be read against the other parties ; and this from necessity, or because such co-defendants may be converted into witnesses, (r) And so it would seem at common law there is a case where, from necessity, one of the defendants may be called on as a witness to testify for the plaintiff against the co-defendants, " inasmuch as some books have said, that though the witness named in the deed be named a disseisor in the writ, yet he shall be sworn as a witness to the deed.”(s)
*268 But, although it is a settled rule in equity as well as at law, that no one can be a witness who is interested in the event of the suit; yet, as it is often proper in equity to make persons parties to the suit who have no substantial interest in the whole subject of it; or in that distinct and separate part of it as to which they may be called upon to testify, — as where a bare trustee is made a co-plaintiff or co-defendant; or where it appears, that the plaintiff has no claim to any relief whatever against one or more of the defendants; or that he has cause of suit against one only as to one subject and against another as to a different subject, but has no cause of suit against them all jointly; unless the court permits the disinterested co-plaintiff or co-defendant to be examined as a witness for the others in such case, — the really interested plaintiff may lose his right; or the plaintiff by thus making two or more persons defendants to his suit may, by that sort of mechanism, deprive the one defendant of the benefit of the other’s evidence.(t) And therefore it is quite common in chancery, to apply by petition, to have one of the parties examined as a witness, subject to all just exceptions; and unless the interest of the party, so proposed to be examined, is perfectly apparent, the order is granted almost as a matter of course, leaving the objections to be made and considered when the testimony is brought in.(u) But where a defendant has been examined and received as a witness to the whole cause of action, the bill as to him must be dismissed with costs; because the plaintiff, by calling for and using his testimony, thus virtually admits, that he has no cause of complaint against him.(v)
Hence it may be assumed as a general rule, that where there must be a decree against all the defendants because of their joint or blended interests, there no one of them can be examined as a competent witness in the case ; and upon the same ground of the indivisible and inseparable nature of their interests, the defence of any one, which shews, that the whole of such alleged joint or blended interest, never existed or has been barred or satisfied, must *269 necessarily preclude all relief against any one of them. But where it appears, that the cause of suit against each arises out of distinct subjects; there, as each defendant is a competent witness as to the subject in which he is not interested, so there may, in respect to such different subjects, be separate decrees against each.
But here it has been shown, that the legal representatives of John Henderson are, all of them, liable to be charged by the contract set out in the bill, to the extent of the assets which have come to their hands respectively. And that, although each of them, to the extent of those assets, is so entirely liable to the plaintiffs as to entitle them to any relief, under the general prayer of their bill, that may be deemed most for their benefit; yet these defendants, as against each other, have an equitable claim to contribution; and therefore, as among them, the court may, if called upon, by a decree over, so adjust the burthen as to cause it to bear equally or in due proportion upon each of them.(w)
Consequently, as this cause of suit is in its nature indivisible, and the same against all of these defendants; and as no one of them has even set up, much less sustained any separate defence, which, like that of a plea of plene administravit by one of two or more executors, would go to show, that he could not be charged in connexion with the other defendants, the interests of all must be bound by the decree, unless it shall be found from the defence of any one, either that the whole cause of suit never existed, or that it has been barred or satisfied. It now, therefore, becomes necessary to consider the nature of the defences, which have been made to this bill of complaint.
From tire general character of the answer of English and wife, and from the express and distinct allegations in the body of it, and also from its having been received and replied to by the plaintiffs; the court may now regard, it as the separate answer of each, as much so as if the wife had obtained an order expressly allowing her to answer separately. A wife cannot, under any circumstances, be a witness for or against her husband; and, for that reason, he can in no case be bound by anything she sets forth in her answer, (x) Consequently, whether this is to be considered as altogether a joint answer; or as being in fact two regular and distinct answers of these defendants, it is clear, that nothing *270 which Lydia has said can be allowed to affect the interest of her husband Lavid. But in the body of this answer, which has been properly sworn to by her as well as her husband, she expressly declares, that as to various circumstances as therein set forth by way of defence, she speaks for herself alone, as the administratrix of the deceased John Henderson. Where a bill was filed by a legatee against husband and wife, she being the executrix, and after they had answered he died; it was held, that she was bound by the answer they had so made in his lifetime.(y) And where the husband and wife had not answered separately, or had not so answered under the previous sanction of an order of the court, she was held bound by so much of the answer as was called for and purported to come from her ;(z) or which in point of fact had been made by and received from her as her separate answer, (a) And if a wife who is executrix knows, or apprehends, that her husband will answer to her prejudice, or if in any case she disapproves of the defence he wishes to make, the court will give her leave to answer separately.(b) So that in whatever way this answer of English and wife is taken, as nothing therein set forth, as coming from her, can affect his interest; and as he professes, so far as he answers for himself, to know nothing of the matter, the several parts of it, which so distinctly profess to be the allegations of each, may safely and most advantageously for each be treated as if they had been set forth in regular and entirely separate answers from each of them.
Taking this answer in this way, then, it appears, that the defendant David English, without expressly denying any thing, admits nothing; but puts the whole of the plaintiff’s case in issue. His defence goes to the very origin, foundation and existence of the plaintiff’s whole cause of suit; and, therefore, it behooves them to sustain their whole case in every way against him, or they must totally fail. The defendant Lydia, in effect, admits the original foundation of the plaintiff’s cause of suit; but, by way of avoidance, considering it as a contract of bargain and sale of a tract of land, avers, in substance, that the purchase money, in the modes therein described, has been paid and fully satisfied. This defence, *271 being one by which she confesses and avoids the cause of suit, it lays upon her to prove her allegations in avoidance; or otherwise, if the plaintiffs sustain their cause against the broad defence of her husband David, they must be relieved as prayed against both of them. Again, the defendant Richard Henderson pleads the statute-of limitations ; by the form of which he, in substance, avers, that, although the cause of suit might have once existed; yet, as the original contract had not been in any way renewed by any recent acknowledgment or promise, it has been altogether barred by the prescribed lapse of time. If this be a plea properly applicable to the nature of this case, and if it be in fact true, then, as it goes to the whole cause of suit, and shows that it has been totally barred, the plaintiffs can have no relief whatever.
It is perfectly clear, therefore, from what has been said, that if either one of these three defences be sustained, the plaintiffs can have no relief; and that their bill must be dismissed with costs, notwithstanding it might otherwise haye been'taken pro confesso against the two defendants who have made default.
The plaintiffs have stated their case with a double aspect, so as to entitle themselves to relief in either of the alternatives upon which they rely. They have rested their case upon its being considered either as a conveyance in trust, or as a bargain and sale, leaving the purchase money unpaid. They have stated their case in this way, as they believe it to have- been; but as a reason for not being more exact in every particular, they say, “ of this, or of the terms of the contract, if any, they have not been able to discover any positive proof;” and thus admit, that their statements may be in some respects inaccurate; because they were not in possession of that information which would enable them to set forth their case with greater certainty; and therefore, they pray a discovery of the defendants. If then the statements of the bill were in any essential particular incorrrect, the defendants should have objected to it on that account; but they have not done so; and therefore the plaintiffs are entitled to have their bill now regarded as entirely sufficient, so far as it sets forth a case which, in substance, entitles them to the relief they ask.(c)
There is no proof of any thing like a trust; therefore, that alternative view of the plaintiff’s case may be at once put aside. The *272 deed of the 8th of May, 1807, proves, that James M. Lingan did then convey the tract of four hundred and twenty acres of land in the bill mentioned to John Henderson ; the receipt or memorandum of the 10th of June, 1807, which has been authenticated, proves, that the purchase money was not then paid; and the witness Henry Waring, in consistency with, and in corroboration of these instruments of writing, proves, that John Henderson, in his lifetime, repeatedly admitted he had purchased the land referred to in those instruments of writing, for which he was to pay thirteen dollars and one-third of a dollar per acre; but that he had paid no part of the purchase money, and was unable to pay it; and this witness further proves, that the land was held by John Henderson until his death, when it descended to his children, who are defendants to this suit. There is no proof of the purchase money ever having been paid. It is admitted, that James M. Lingan is dead, and that these plaintiffs are his legal representatives. This is the substance of the case, according to the proofs, and in all material points, it accords exactly with one of the alternatives of the case set forth in the bill.
Whence it is sufficiently clear, that the plaintiffs have sustained their case in opposition to the general defence of David English. And, as there is not the least evidence of any payment or satisfaction ever having been made in the manner relied on in defence by the defendant Lydia English, the plaintiffs may obtain relief against her also as well as her husband.
The defendant Richard Henderson has put his defence entirely upon his plea of the statute of limitations; and the plaintiffs having established their case in all respects in opposition to the other defences; and the other defendants having made default; the whole controversy is thus reduced to the single question, whether this be a valid defence against the whole or not. It is, therefore,proper, that it should be carefully considered.
All statutes of limitation proceed upon the policy comprised in the maxim, interest reipublicce ut sit finis lilium; that some lapse of time must be prescribed in order to give quiet to human affairs; and as affording ground to presume, without the power of contradiction, that the aEeged cause of controversy, either never existed at all, or that if it did once actually exist, it had been in some way finally adjusted and satisfied.(d) This principle of *273 limitation, under one or other name or form, is to be found in all codes of law. It is a rule, which, as to some cases, is prescribed in positive terms by the legislature, while as to others it is the result of usage or judicial decisions; but in all instances the lapse of time specified, as applicable to the case, gives a rule by which all courts of justice are bound. The statute of limitations does not apply in terms to proceedings in courts of equity; it applies to particular actions at common law, and limits the time within which they shall be brought, according to the nature of those actions; but it does not say there shall be no recovery in any other mode of proceeding. If the equitable title be not sued upon within the time within which a legal title of the same nature ought to be sued upon, to prevent the bar created by the statute, the court acting by analogy to the statute, will not relieve. If the party be .guilty of such laches in prosecuting his equitable title as would bar him, if his title were solely at law, he shall be barred in equity; that is all the operation this statute has or ought to have on proceedings in cquity.(e)
But at law, as well as in equity, there are various peculiarities, which have been held to be sufficient to take a case out of the operation of the rule. They are either such as have been omitted to be noticed in the statute itself;(f) or they are such as the statute has expressly specified; or they are such as arise out of facts and circumstances, — as where the courts of justice have been closed by some great national calamity ;(g) or where the parties stand in the relation to each other of trustee and cestui que trust ;(h) or where the party, by omitting to plead or ask in his answer the benefit of the statute of limitations, thereby tacitly admits, that the rule cannot or need not be applied to his case;(i) or where, by an express declaration or acknowledgment admitting the claim, he thereby renews the contract or cause of suit, and thus tacitly admits that his case is not within the terms of the rule.(j) In all cases where this court, having cognizance of the whole case, finds it unconscionable to suffer the statute of limitations to be applied, it will be disregarded; and in all other cases, of which this court does *274 not take cognizance, because of its being improper to break m upon the regular course of legal proceedings more than is necessary for the purposes of justice, it will prevent a party from taking an unequitable advantage of the statute of limitations, or any lapse of time at law. (k)
Defences resting upon the statute of limitations at law, or upon the same lapse of time in analogous cases in equity, seem to have been treated with a rather unsteady hand. They have been sometimes regarded as deserving much favour, while at other times they have been scowled upon as subterfuges, resorted to for the purpose of escaping from the real merits and justice of the case;, and particularly so, where, as in this instance, such a defence has been relied on by only one of a plurality of defendants as a total bar to the whole cause of suit. But there cannot be, in reality, any such pliability in the general rules of law as will allow of their being bent and twisted in one way or other at the pleasure of any court of justice by whom they may be administered.
Here, however, it is insisted by this plea, that neither this defendant Richard Henderson, nor John. Henderson deceased, did at any time within three years, before the exhibition of this bill of complaint, promise or agree to pay, or satisfy the plaintiffs or James M. Lingan, any sum of money on account of the transaction in the bill of complaint mentioned. From which it would seem, that, although it is insisted, the whole cause of suit has been barred by the statute of limitations, yet, as this defendant Richard Henderson has denied, that he himself made any promise, his plea does thereby tacitly concede, that an acknowledgment of this cause of suit, made by himself or any other of his co-defendants, would take the case out of the statute; upon the ground, that if such a plea from any one defendant would be a bar to the whole, then an acknowledgment by any one would revive the whole. And if so, then, apart from the defences of English and wife, as there is here a default and tacit admission of the whole by two others of these defendants, this plea of the defendant Richard Henderson can be of no avail to himself, or to any of his co-defendants. (l)
If this position be tenable, then it is evident, that as in all cases, where the statute of limitations is not expressly relied on, it is considered as waived, it can in no case be received as a valid defence, where there is a plurality of defendants; unless each one, *275 or all of them together, expressly rely upon it. But, as has been shown, it is a well settled rule, in equity as well as at law, that any defence coming from any one of a plurality of defendants, which goes to the whole, and shows, that the plaintiff has no cause of suit, effectually precludes the court from giving relief in any way whatever against any other defendant, as well as against him who makes such a defence; because a plaintiff can only obtain relief upon the strength of his own title, and by shewing, that it is good against all the world as well as against each one of the then defendants; and alsoj because every court of justice must act consistently, and cannot be allowed to contradict itself, by saying, in the same decree, in the same case, that the plaintiff has no cause of suit whatever; and also, that he has a just and well founded cause of complaint. (m)
It may therefore be regarded as an inflexible general rule, which admits of few, if any exceptions, that according to any view which can be taken of the case, or upon any defence made against it, if it appears, upon the whole record, that the plaintiff’s title, or cause of suit, is a mere nullity, of has been barred., satisfied, or extinguished in any way whatever, he can have no relief.
There are, however, some cases which present an apparent exception to this general rule. A court of equity may, and always does, shape its decree according to the "nature of the case, so as to place the burthen as nearly as may he where it ought to rest. Where there are many defendants, and some or one of them only is found liable to the plaintiff’s cause of suit, the bill may be dismissed as to the others; or a defendant who has been made so merely because of his being the depository of the fund, for the purpose of having it detained in his hands by injunction, may, by the dissolution of the injunction, cease to be a necessary party, even before the case has been brought to a final hearing ;(n) or if the plaintiff has a separate cause of suit against each, then each of them may be charged according to their respective liabilities; or where all the defendants are alike bound for the whole to the plaintiff, but some of them stand only as sureties for the other, there the court may, by a decree over, provide for the relief of the sureties against their principal, in case they should satisfy the claim, or direct a contribution, in case any one surety should pay more than his proportion. These instances are *276 common, and the course of the court, in that respect, is -well settled. The court is involved in no contradiction or inconsistency by any such decree; as a defendant in equity can only be charged to the extent of his liability, so the court’s decree against him must be modified accordingly. But as no one can be permitted impertinently to interfere with a matter by which he is not proposed to be, or obviously cannot be charged, a defendant cannot be allowed to direct any sort of defence against all or any distinct portion of the plaintiff’s cause of suit in which his interests are not implicated, or by which he can be subjected to no kind of liability. Where, however, a defendant’s liability is such, as principal or otherwise, that he must be charged by a decree which affirms the validity of the alleged cause of suit, then he may rightfully direct any defence against it which goes to shew, that neither he himself, nor any one of, his co-defendants, ought to be charged by it; and if he succeeds in establishing such a defence, the plaintiff’s bill must be totally dismissed. .
Hence it is obvious, that this class of cases, in which the court may find it necessary or proper, because of their peculiar circumstances, to pass a separate, a reciprocal, a direct, or an inverted decree, do in reality present nothing which can fairly or in any way be considered as an exception to this general rule.
But where two or more persons have been bound by the contract upon which the suit has been brought, and one of them pleads the statute of limitations in bar, it has been said, that an acknowledgment made, within the limited time, of its then existing validity by such defendant, or by any other of his co-defendants, will take the case out of the statute. The adjudications in relation to this matter are various and contradictory. Therefore, without attempting to reconcile them, it will be sufficient to trace out the reason of the law so far as it is believed to be properly applicable to this and all such cases in equity.
To constitute a valid contract of any description, it is indispensably necessary that the parties should be competent to contract; and being so competent, that they should all of them, in the manner prescribed by law, understandingly have given their free consent to the contract in question. In general, when the contract purports to be the obligation or promise of two or more persons, it must be shewn, that each one of them distinctly gave his consent to it, and thereby actually and in terms for himself became so *277 bound. But where there exists a partnership in trade, each partner may make certain contracts in the name of the whole which shall be obligatory alike upon all the partners. Now, in all such cases, any one of the contractors may satisfy the entire demand of' the contract; and upon its terms being wholly complied with by any one of them, it is thereby totally extinguished and ceases to be any longer obligatory upon any one of them in favour of him to whom it was given. That a contract may be wholly satisfied by any one of the contractors, and when so satisfied is thereby totally extinguished as to all, is a principle of law so obviously rational and just, that it need only to be stated to be universally admitted.
Consequently it is equally manifest, that any renewment of a contract, which has been thus satisfied, barred or extinguished, can only be effected by the exercise of a similar capacity to contract to that which had been called forth for its original formation. Suppose then, the alleged cause of suit to be an agreement whereby all the defendants had bound themselves to pay to the plaintiff a certain sum of money. In support of such a cause of suit it is necessary to prove, that each one of the defendants, by his express consent, did actually become bound by it. And, therefore, after it has been barred or extinguished, it is no less necessary, in order to show that it has been renewed, to prove, in like manner, that each of the defendants did, by his express consent, become bound by such new agreement; because it is no less essential to the validity of the new, than it was to that of the old agreement, that it should be shewn to have been expressly assented to by each one who is proposed to be charged by it. Where there is no separate cause of suit against any one defendant, and each one of them is no otherwise chargeable by such agreement than as party with all his co-defendants, it must be established as an agreement to which all are liable, or the plaintiff can take no benefit from it, and his bill must be dismissed. But where it is shewn, that a partnership in trade did actually exist between the defendants, there, as during the continuance of such partnership, all the partners may join in making a promissory note, or the like, in relation to their trade, so as to bind the firm; so, during the continuance of the partnership, a promise by any one of the partners will as effectually renew such contract, as an express promise by all of them; because, during the continuance of the partnership, each partner has the power to *278 make a contract of that nature, which shall be obligatory upon all.(o)
Hence it follows, as a promise or acknowledgment can only take a case out of the statute of limitations because of its being, of itself, a new promise, or because of its being satisfactory evidence of the renewment of the contract, it is perfectly clear, that such promise or acknowledgment must come, not merely from one alone, but from each, or all of the contractors, or from a partner in trade who has a then power of contracting in the name of all. And, consequently, a promise or acknowledgment of one alone of several contractors, or of one partner, after the dissolution of the partnership, can no more take a case out of the statute of limitations than the promise of one man can be allowed to operate as an original obligation upon another, without his consent. (p)
Where a plaintiff’s cause of suit is made up of several distinct parts, each of which may have been separately accounted for and satisfied; there, as the statute may have a distinct operation against each part, a plea of the statute of limitations may be supported as a good bar to some of such separate parts, though not to the whole.(q) But a contract which is entire and indivisible in its nature, must necessarily be altogether good or bad; it must be executed as it stands, or be totally rejected. If it makes no discrimination between the several contractors who are bound by it, the court can make none, at least to the prejudice of him for whose benefit it was made; since it is a settled axiom of law, from which no court of justice has ever ventured substantially to depart, that the obligation of a legal contract cannot be impaired in any way whatever. So far as the courts of justice are concerned, all the incidental as well as all the direct obligations of contracts have been most sacredly preserved; and, that this inestimable judicial rule should be made universal and unalterable, it has been declared *279 by the Constitution of the Union, that no State shall pass any law impairing the obligation of contracts.
But, if a bond, promissory note, or contract binding two or more persons could be split up among them, and their general and common liability portioned out upon each, it might, in that way, be so essentially altered as to be no longer the contract into which they entered; its benefits might be cut down, scattered and totally lost; its burthens might be made to bear upon each in a manner wholly different from that to which he had consented; and its incidental obligations, entitling a contractor to a remedy over, or to contribution, might be partially 'or totally set aside without his consent, and to his utter ruin. These would be some of the inevitable consequences of allowing a plea of the statute of limitations to be received as a bar of the cáuse of suit founded upon such a contract, so far only as to be an exoneration of the contractor, by whom it was pleaded, leaving the others to bear the whole burthen or only so much of it as should remain, after, some how or other, deducting that which ought to have been borne by him who had been so discharged. Any such partial or proportional impairment of the contract would, however, not only be unjust and unconstitutional, but the execution of such a rule, as, that a plea of limitations should enure only to the benefit of him who pleads it, might be found, in cases, such as creditors’ suits, where a great number of persons had been brought or let in as parties having a variety of conflicting interests in the controversy, to be arithmetically and absolutely impracticable.
But, in the case now under consideration, there was originally but one person, John Henderson, liable under the contract set forth in the complainants’ bill; and therefore, any acknowledgment coming from him might well have been considered as a new contract, upon the terms set forth, so as to bind him, and taire the case out of the statute of limitations; but by his death, the liability has devolved upon all these defendants; and therefore, as no one of them has the power alone to make a new contract upon the same terms so as, in like manner, to bind all the others; so no tacit admission, or acknowledgment, or even express promise of any one of them can be received as sufficient to take the case out of the statute of limitations, if it shall appear to have been properly applied and relied upon by this defendant, Richard Henderson, alone.
*280 From their nature, pleadings in equity do not in general admit of the same precision as pleadings at law; but in equity, as well as at law, the pleadings must be substantially sufficient. The plaintiff is not tied down to any particular form of stating his case in his bill; for, however loosely or awkwardly its statements may be made, yet he may obtain the relief he seeks, if, upon a fair reading of the whole, it appears, that a sound case has been substantially set forth. But if a defendant in equity puts in a plea, considerable precision is required; because he thereby proposes to reduce his case to a single point.(r) And therefore, as to pleas in equity, there does not appear to be any material difference between the rules of a court of common law, and those of a court of chancery. Where the case, as stated in the bill, appears to involve several distinct subjects as component parts of one complex whole, and the defendant offers a plea in bar, it must be so framed as to be exactly applicable to the case; for if it be impossible to know to which of the several subjects spoken of in the bill it precisely refers, it will be deemed bad in form as well as in substance.(s) So too a plea in equity, as well as at law, must tender a material issue; it must not only reduce the defence to a single, point, but that point must be of such a nature as, when determined, will enable the court to put an end to the case.(t) In equity, as at law, a plea of the statute of limitations must be properly applicable to the particular nature of the case; as where a note was given for the payment of an annuity during the life of the annuitant, the defendant pleading, that he did not promise to pay within six years is bad; he should have pleaded the cause of action hath not accrued within the six years.(u) And so, in an action of trespass, the statutory limitation to which is four years, where the defendant, instead of relying upon that lapse of time as a bar, pleaded not guilty within six years; the plea upon demurrer was held bad; because it did not precisely disclose, and rely upon that which had been made a bar by the statute.(v) Whence it appears to be necessary, that the plea of this defendant Richard Henderson, should be found to have reduced the defence to a single material point, the determination of which will enable the court at once to put an end to the case.
*281 The bill being framed in the alternative, asking either a reconveyance of the land or the payment of the purchase money, this defendant Richard Henderson has directed his defence mainly to the latter alternative, being well aware, that there was no evidence of any such trust as could authorize the plaintiffs to call for a reconveyance, of the land. And, regarding the bill in this latter aspect, as praying only for the payment of the purchase money, it has been urged, that it is, in effect, no more than a suit for the recovery of money due by simple contract, to which this plea is as properly applicable as it would have been to such a demand in a court of common law. The defendant Richard Henderson, confidently proceeding upon this ground, as it would seem, has accordingly so framed his defence. His plea, after referring to and reciting the act of 1715, ch. 23, avers, that neither he nor the said John Henderson deceased, did at any time within three years before exhibiting the bill or serving or suing out process against the defendant, promise or agree to come to any account for or to pay, or any way to satisfy the complainants, or the said James M. Lingan any sum of money for or by reason of the matters, transactions, or things in the bill of complaint mentioned.
But, although this may be admitted to be one of the views which may be taken of the case set forth in the bill, yet it does not comprehend and reduce to a single point all the material equity which belongs to it; on the. contrary, considering it as nothing more than a bill for the recovery of so much money, due by simple contract, it may well be doubted, whether this court could take cognisance of it at all. But this is, in substance, a bill by vendors against purchasers to enforce an equitable lien as a means of recovering the purchase money; and therefore, admitting it to be true, that the cause of suit, so far as it is founded in simple contract, which is the only point presented by the plea, has been barred by the statute of limitations, yet the determination of that point does not close the substantial equity of the case, because the plaintiffs’ equitable lien must still remain to be disposed of by the court.
But the act of assembly, which prescribes the limitation of actions upon bonds, notes, and simple contracts, does not apply to suits in chancery, for the recovery of money secured by a mortgage, or an equitable lien ; or to mortgages in any way or of any description. For even supposing, that, along with a mortgage, a bond or note had been given as a security for the same debt; and a suit had been brought on the bond or note, which had been, on a *282 plea of limitations, adjudged to be barred; yet, that would not have affected the party’s remedy upon the mortgage; because, the suit in chancery upon the mortgage involves the title to the land, which, by analogy, can only be barred by the limitation of twenty years, At law the lapse of twelve or three years is an absolute bar to the remedy upon a bond or simple contract. But a mortgage is a security of a higher and more durable nature; one by which the right to the land is pledged for the payment of the debt. The lapse of twenty years, in such cases, has been allowed, by analogy, and not by any direct operation of the statute limiting the time within which an entry into land must be made, to raise a presumption, either that the debt so secured never was due, or that it had been paid.(w) And, upon the same principles, a similar presumption of satisfaction after the lapse of twenty years has been held to be a bar to a bill for the recovery of the purchase money founded on the vendor’s equitable lien, (x) But, where a mortgage, and a bond or note has been given to secure the payment of the same debt, the creditor may sue on all his remedies at the same time. He may file a bill in chancery to foreclose, bring an action of ejectment, and also an action upon the bond or note. The lapse of twelve or three years would be a bar of his action upon the bond or note; but the ejectment could only be barred by a lapse of twenty years. The bill in chancery to foreclose the mortgage or to enforce the equitable lien, being analogous to the proceeding at law by ejectment upon the mortgage, can only be barred by a similar lapse of time.(y) Hence, although issue has been joined on this plea, it must be regarded as a nullity; since there is nothing in the case to which it can at all apply.
Recollecting that the deed of conveyance from James M. Lingan to John Henderson, bears date in May, 1807, after which John Henderson repeatedly acknowledged, that he had paid no part of the purchase money; that a plea admits the truth of every thing stated in the bill not denied by it; that there is no answer in support of this plea denying the truth of those acknowledgments charged in the bill to have been made by John Henderson, which would certainly take the case out of the statute had it been barred in his lifetime; and that this suit was instituted in November, 1821, it is *283 perfectly evident, that the statute of limitation,?, in no form in which it could have been relied on as a defence, could operate as a bar to the equitable lien by which this land was bound to the plaintiffs for the payment of the purchase money. And it being entirely clear, from the pleadings and proofs, that the purchase money agreed to be paid by the late John Henderson, for the four hundred and twenty acres of land he purchased of the late James M. Lingan, never has been paid by any one; and that the vendor’s lien for its security never has been abandoned, or in any way extinguished, the plaintiffs must be relieved, under their general prayer, in the most advantageous and effectual manner authorized by the nature of their case.
Whereupon it is Decreed, that the bill of complaint as against the absent defendants, who have not answered, be taken pro confesso. Decreed, that the statement of the auditor be confirmed; and that the defendants, on or before the 8th of June next, pay or bring into this court, to be paid unto the said Janet Idngan, as administratrix of James M. Lingan, the sum of ‡11,924 14, with legal interest on $5573 33, part thereof, from the fifth day of the present month until paid or brought in. And Decreed, that upon the failure of the said defendants to pay or bring into court the said sum of money as aforesaid, that then. the said land and property in the proceedings mentioned, be sold for the payment of the same; that Louis Gassaway be and he is hereby appointed trustee to make the said sale, &c. &c., in the usual form.
The defendants appealed from this decree, and at June term, 1830, the Court of Appeals reversed the decree, and dismissed the bill of the complainants with costs, but filed no opinion. In the case of McCormick v. Gibson, 3 Gill & Joh. 18, the. Court of Appeals -have, however, concisely stated their views of this case.

 Rymer v. Dulany — 1787.—Petition for a commission de bene ease, stating that the petitioners, the plaintiffs, were in want of the testimony of Abraham Cream, of Frederick county, who was a material witness for the petitioners in the said cause, and who was about eighty years of age, and sick and impotent. Granted. — Chan. Pro. lib. S. H. H. lett. C. fol. 296.

 Martin v. Russell, MS., 22d December, 1797.

 Carew v. Johnston, 2 Scho. & Lefr. 280.

 Buxton v. Marden, 1 T. R. 81.

 Cooth v. Jackson, 6 Ves. 37; Rowe v. Teed, 15 Ves. 375; Jones v. Slubey, 5 H. & J. 383.

 Joynes v. Statham, 3 Atk. 389; Blagden v. Bradbear, 12 Ves. 471; Hartopp v. Hartopp, 17 Ves. 191; Co. Litt. 222 b. n. 2; Pow. Mort. 200.

 Trisler v. Williamson, 4 H. & McH. 219; Hughes v. O’Donnell, 2 H. & J. 324; 4 Stark. Ev. 1272.

 O’Neale v. Lodge, 3 H. & McH. 433; Dixon v. Swiggett, 1 H. & J. 252; Higdon v. Thomas, 1 H. & G. 145; Knight v. Pechey, Dick. 327; Sug. Ven. & Pur. 386; Pow. Mort. 1062; Irvine v. Campbell, 6 Bin. 118; Duval v. Bibb, 4 Hen. & Mun. 113.

 Mitf. Pl. 141, 154, 232; Barfield v. Kelly, 4 Russ. 355; Watts v. Lindsey, 7 Wheat. 161.

 Hovenden v. Annesley, 2 Scho. & Lefr. 638; Kemp v. Pryor, 7 Ves. 240; Wright v. Plumptre, 3 Mad. 481; West v. Hall, 3 H. & J. 223.

 Chicot v. Lequesne, 2 Ves. 317; Gordon v. Gordon, 3 Swan. 472.

 Muckleston v. Brown, 6 Ves, 62; Saxton v. Davis, 18 Ves. 80.

 Beaumont v. Boultbee, 5 Ves. 495.

 Durant v. Durant, 1 Cox. 58.

 Manaton v. Molesworth, 1 Eden, 26; Roche v. Morgell, 2 Scho. & Left. 729; Polk v. Clinton, 12 Ves. 65; Hiern v. Mill, 13 Ves. 119; Jones v. The Parishes of Montgomery, &c., 3 Swan, 208; Wilkinson v. Beal, 4 Mad. 408 ; Mitf. Pl. 38.

 Perry v. Phelips, 17 Ves. 176.

 Edwards v. Edwards, Jac. Rep. 335.

 Cresset v. Kettleby, 1 Vern. 219; Bennett v. Vade, 2 Atk. 325; Jones v. Jones, 3 Atk. 111.

 Kemp v. Pryor, 7 Ves. 245.

 Mitf. Pl. 44, 154.

 Barker v. Dacie, 6 Ves. 686. The King of Spain v. Machado, 4 Russ. 225.

 Rigeway’s Case, 3 Co. 52; Brace v. Taylor, 2 Atk. 253; Piggott v. Williams, 6 Mad. 95.

 Sprigg v. Weems, 2 H. & McH. 266.

 Godfrey’s Case, 11 Co. 45; Gregory v. Molesworth, 3 Atk. 627.

 2 Will. Ex’rs. 1218.

 Robinson v. Bland, 2 Burr. 1082.

 Mason v. Peter, 1 Mun. 437.

 Co. Litt. 125.

 Martin v. Ayliffe, Cro. Jac. 134.

 Porter v. Harris, 1 Levintz, 63; Morgan v. Edwards, 6 Taunt. 394; Weaver v. Prentice, 1 Esp. N. P. C. 369.

 Biggs v. Benger, 2 Ld. Raymd. 1372; 8 Mod. 217.

 Cheetham v. Ward, 1 Bos. & Pul. 630; 2 Will. Ex’rs. 812.

 Berry v. Usher, 11 Ves. 87; Simmons v. Gutteridge, 13 Ves. 264; 1798, ch. 101, subch. 8, s. 20.

 2 Will. Ex’rs. 1218.

 Elwell v. Quash, 1 Stra. 20; 3 Bac. Abr. 33; 2 Will. Ex’rs. 1198.

 Anonymous, 2 Ca. Cha. 39.

 Ward v. Meath, 2 Ca. Cha. 173.

 Jolliffe v. Pitt, 2 Vern. 694.

 Norton v. Turvill, 2 P. Will. 144.

 Harris v. Pollard, 3 P. Will. 348.

 Clason v. Morris, 10 John. Rep. 524.

 Royal v. Johnson, 1 Rand. 421.

 2 Mad. Cha. 441; Fereday v. Wightwick, 4 Russ. 114.

 Field v. Holland, 6 Gran. 24; Osborn v. U. S. Bank, 9 Wheat. 832; Jones v. Magill, ante 177.

 Clark v. Vanriemsdyk, 9 Cran. 156.

 Rybott v Barrell, 2 Eden, 133; Dummer v. Corpo. of Chippenham, 14 Ves. 252. Le Texier v. Anspach, 15 Ves. 164.

 Co. Litt. 6.

 Nightingale v. Dodd, Mosl. 229; Amb. 583; Murray v. Shadwell, 2 Ves. & B. 404.

 Casey v. Beachfield, Prec. Ch. 411; Piddock v. Brown, 3 P. Will. 288. Meadbury v. Isdall, 9 Mod. 438; Gibson v. Albert, 10 Mod. 19; Dixon v. Parker, 2 Ves. 219; Man v. Ward, 2 Atk. 228; Barret v. Gore, 3 Atk. 401; Armiter v. Swanton, Amb. 393; Franklyn v. Colquhoun, 16 Ves. 219; De Tastet v. Bordenave, Jacob, 516; Fereday v. Wightwick, 4 Russ. 114; Hougham v. Sandys, 2 Sim. & Stu. 221.

 Thompson v. Harrison, 1 Cox. 344; Weymouth v. Boyer, 1 Ves. jun. 416; 2 Fow. Ex. Pra. 85, 86.

 Meadbury v. Isdall, 9 Mod. 438; 1 Mad. Chan. 233.

 Le Texier v. Anspack, 15 Ves. 165.

 Shelberry v. Briggs, 2 Vern. 249.

 Wrottesley v. Bendish, 3 P. Will. 236; Le Neve v. Le Neve, 3 Atk. 648.

 Chandos v. Talbot, 2 P. Will. 371.

 Ex parte Halsam, 2 Atk. 50; Wybourn v. Blount, Dick. 155; 2 Eq. Ca. Abr. 66; Mitf Pl. 104.

 Carew v. Johnston, 2 Scho. & Lefr. 305; Wright v. Plumptre, 3 Mad. 480; Zane v. Zane, 6 Mun. 406.

 1 Stark. Ev. 33; 4 Stark. Ev. 1234; Smith v. Clay, 3 Bro. C. C. 639, note

 Bond v. Hopkins, 1 Scho. &. Lefr. 428; Stackhouse v. Barnston, 10 Ves. 466; Shipbrooke v. Hinchingbrook, 13 Ves. 396; Cholmondeley v. Clinton, 2 Jac. & Walk. 139; Christophers v. Sparke, 2 Jac. & Walk. 233; The Rebecca, 5 Rob. Ad. Rep. 104; Morgan v. Davis, 2 H. & McH. 17.

 4 Bac. Abr. 472.

 Co. Litt. 249.

 4 Bac. Abr. 473.

 Prince v. Heylin, 1 Atk. 494.

 Oliver v. Gray, 1 H. & G. 213.

 Bond v. Hopkins, 1 Sch. & Lefr. 430.

 Johnson v. Beardslee, 15 John. Rep. 3.

 Gregory v. Molesworth, 3 Atk. 626.

 2 Mad. Chan. 191.

 Ex parte Dewdney, 15 Ves. 480; Whitcomb v. Whiting, Doug. 652; Tinkler v. Walpole, 14 East, 226; Gow. Part. 79, 212; 4 Stark. Ev. 896; Blanch. Stat. Lim. 124; Clementson v. Williams, 8 Cran. 72; Clark v. Vanriemsdyk, 9 Cran. 156; Bell v. Morrison, 1 Peter. 367; Walden v. Sherburne, 15 John. Rep. 409; Rootes v. Wellford, 4 Mun. 215; Fisher v. Tucker, 1 McCord, 172; Wilmer v. Harris, 5 H. &. J. 9; Ward v. Howell, 5 H. & J. 60.

 Hyleing v. Hastings, 1 Ld. Raym. 389; Boydell v. Drummond, 2 Camp. 157; Sterndale v. Hankinson, 1 Sim. 393; Jones v. Moore, 5 Binn. 573.

 Webb v. Martin, 1 Levintz. 48; Coventry v. Apsley, 2 Salk. 420; Aldridge v. Duke, 3 Mod. 110.

 Carew v. Johnston, 2 Scho. & Lefr. 305; Rowe v. Teed, 15 Ves. 377.

 Meder v. Bert, Gilb. Eq. Rep. 185; Talbot v. May, 3 Atk. 18.

 Jones v. Davis, 16 Ves. 264; Morrison v. Turnour, 18 Ves. 181; Steff v. Andrews, 2 Mad. Rep. 5; Co. Litt. 126.

 3 Atk. 70; Gould v. Johnson, 2 Salk. 422.

 Blackmore v. Tiddertey, 2 Ld. Raym. 1099; Macfadzen v. Olevant, 6 East, 389.

 Toplis v. Baker, 2 Cox. 123; Pow. Mort. 361, note T. 393 note, 1153, 1155.

 Bidlake v. Arundel, 1 Rep. Cha. 93; Hunton v. Davies, 2 Rep. Cha. 44; Mathews Presum. 395.

 Pow. Mort. 966, note G.; Hughes v. Edwards, 9 Wheat. 494.